## STATE v PALMIERI

Ohio Appeals, 7th Dist, Jefferson Co

Decided December 2, 1938

Hugo Alexander, prosecuting attorney, Steubenville, and C. J. Borkowski, assistant prosecuting attorney, Steubenville, for appellee.

Hugo F. Chestosky, Steubenville and H. W. Murphy, Steubenville, for appellant.

## OPINION

By NICHOLS, PJ.

Amatio Palmieri, the appellant herein, was indicted by the grand jury of Jefferson county, Ohio, for the crime of maliciously shooting with intent to kill William Whelan on May 28, 1937. The appellant being arraigned upon this indictment entered a plea, in writing endorsed thereon and signed by him, of "not guilty by reason of temporary insanity."

On November 10, 1937 the trial of the cause was commenced and a jury was duly impanelled and sworn. After the impanelling and swearing of the jury the prosecuting attorney moved the court for a view of the premises where the alleged crime was committed, which motion was sustained by the trial court and the jury taken to make a view of the place where the alleged offense occurred.

Upon completion of the view the jury returned to the court room and the prosecuting attorney proceeded with his opening statement to the jury on behalf of the state of Ohio, after which Mr. Chestosky, of counsel for defendant, proceeded to make his opening statement of the case to the jury and therein made the following declaration:

" * * and so, with that thought in mind, let us now proceed to the considera-

tion of what we say shall be submitted to you by the defense and show and satisfy you that the defendant should not by your verdict be found guilty and sent to the penitentiary, but should be found not guilty by reason of insanity and committed to an institution such as the court might direct."

The prosecuting attorney objected to the remarks of counsel for the defendant and moved that a juror be withdrawn, which motion, after being taken under advisement and upon due consideration, was sustained by the trial court; and the court declared a mistrial of the case, discharged the jury and ordered the defendant to reappear for trial before a new jury, upon the same indictment, on November 15, 1937, to which rulings of the trial court the defendant excepted at the time.

Subsequently the trial court caused to be entered upon the journal of the court, as of November 10, 1937, an entry reciting the foregoing proceedings and further setting forth the following:

"Said statement" (of counsel for defendant) "was not withdrawn or in any manner excused by defendant's attorney and was made to the jury by one attorney representing the defendant before any evidence was presented in the trial of said cause.

"In discharging a jury in a criminal case the last sentence in §§13443-18, GC of the state of Ohio, provides as follows:

" 'The reason for such discharge shall be entered on the journal.'

"Complying with the mandate of the statute, this court believed, from what was said and the manner in which it was said, that said statement was of such gravity that the court could not cure the prejudice created in the minds of the jurors by said improper statement of defense counsel by a proper admonition or charge to the jury for the following reasons:

"1. The statement of defense counsel above referred to is a violation of §13442-8, GC, paragraph 2, which provides as follows:

" 'The defendant or his counsel must then state his defense and may briefly state the evidence which he expects to offer in support of it.'

"The court is of the opinion that the statement made by defense counsel in opening statement was improper and prejudicial under the provisions of this section of the General Code.

"2. The matter of punishment of the defendant upon the verdict of the jury is a matter strictly within the province of the court and not for the jury, as provided in §13442-9, GC, which provides as follows:

" 'The court must state to the jury that in determining the question of guilt it must not consider the punishment, but that punishment rests with the judge.'

"The declaration made by defense counsel in his opening statement concerning punishment and penalty, therefore, is, in the judgment of the court, improper and prejudicial.

"3. Defendant in open court entered a plea of 'not guilty by reason of temporary insanity.'

"Counsel for the defendant during their voir dire examinations also stated to the jury that the defendant would not deny that he shot the prosecuting witness, and it is the opinion of the court that the improper declaration made by defendant's counsel thereafter in opening statement was made for the sole purpose of laying the foundation to influence the jury as to the matter of punishment and penalty by indicating that the defendant would be punished either by a verdict of guilty or by a verdict of not guilty by reason of temporary insanity, in that if the latter verdict was returned by the jury the defendant would still be confined to an institution, when, as a matter of fact, such an improper statement by counsel is misleading, and by virtue of his plea of temporary insanity, untrue, and defendant would, if able to show his present sanity, be subject to release; and it is the unquestioned opinion of this court that said improper statement, in view of the plea of not guilty by reason of temporary insanity, entered in this case, constitutes said remarks as extremely prejudicial; and that the same constitutes such a fraud, or, if unintentionally done, such an accident, within the meaning of §13443-18, GC, that it is the unquestioned duty of this court, in order to insure substantial justice, and as a necessity in order to effect a fair trial, to withdraw a juror, declare a mistrial and continue said cause, within the meaning of §13443-18, GC, which provides that the court may discharge the jury without prejudice to the prosecution for the corruption of a juror or other accident or calamity.

"4. That if a verdict of 'not guilty by reason of insanity' be returned by the jury, no appeal can be made by the state of Ohio and thus cure this prejudicial error.

"5. It is the further opinion of this court that substantial justice can not be had by the state of Ohio according to the circumstances in this case, should the trial

be allowed to proceed and any verdict returned by this jury; and that there is an absolute necessity for the discharge of said jury in the interests of public justice.

"It is the further opinion of this court that defendant committed said error by reason of the misconduct and prejudicial statement of defendant's counsel, and that the defendant thereby, having nothing further to say to the court, impliedly consents to this disposition by the court of the motion of the prosecuting attorney.

"This court therefore believes from the statement that was said and the manner in which said statement was made to the jury, that this court could not cure said misconduct and wrongful statement by proper instructions, and this court believes that the effect of the weight of said misconduct and wrongful statement and its resultant effect upon the minds of said jurors is a matter within the sound discretion of the trial court. This court, from the reasons above stated and the examination of the indictment itself, believes that said statement was unquestionably prejudicial and that a mistrial should be declared.

"Following the law of the state of Ohio and the dec'sions of the Supreme Court of the United States, it is therefore ordered that the motion of the counsel for the state of Ohio be sustained and that a juror be withdrawn, and more particularly Nathan Jacobs, one of the jurors duly impanelled and sworn; that a mistrial be declared without prejudice to the rights of the state of Ohio, and said cause continued for trial without delay.

"To all of which the defendant objects and excepts."

The cause coming on for retrial in the Common Pleas Court on November 15, 1937, the defendant being present in court represented by his counsel, Mr. Chestosky and Mr. Murphy; and the prosecuting attorney and his assistant being present on behalf of the state of Ohio, defendant filed in the cause a paper writing designated "Plea of Former Jeopardy," in which he set forth the proceedings hereinbefore related, omitting therefrom, however, any reference to the entry which the court had caused to be placed upon the journal setting forth the reasons for the former withdrawal of a juror and declaration of a mistrial, but urging that he had been once in jeopardy upon said indictment and that he should not be called upon to stand trial a second time upon the same charge.

To this plea of "once in jeopardy,"

plaintiff filed a demurrer which was sustained by the trial court, and it was ordered that the cause proceed to a second trial. The defendant excepted to the ruling of the court in respect to the demurrer and objected to the order of the court compelling defendant to submit to further trial; but notwithstanding the objection and exception, the trial court ordered the trial to proceed; a new jury being called and examined by the prosecuting attorney, the defendant refusing to participate in any inquiry respecting such jurors. The new jury was impanelled and sworn and the trial proceeded, the defendant and his counsel being present in court but refusing to take any part in connection with a view of the premises which was ordered by the court and refusing to take any part in the trial which resulted in a verdict of guilty against the defendant, who was, over the objection of his counsel, sentenced to the Ohio penitentiary, to be kept therein at hard labor for not less than one year nor more than twenty years no part of such time to be kept in solitary confinement.

Appeal has been duly prosecuted to this court on behalf of the defendant, the errors assigned being as follows:

1. The trial court erred in sustaining the demurrer to the pea of once in jeopardy, interposed and filed by the defendant prior to the commencement of the second trial;

2. The finding and judgment of the trial court are contrary to law; and

3. Error in the journal entry of the trial court, recorded in Volume 79, pp. 171-a and b, dated November 10, 1937.

In connection with these assignments of error the claim is made that since the first cause, which started November 10, 1937, had proceeded to the stage where a jury had been impanelled and sworn, a view of the premises had and opening statements made, the dismissal and discharge of the jury, on motion of the prosecuting attorney, from further consideration of the cause, without permitting the jury to deliberate upon the case, constituted an acquittal of the defendant.

Art I, Sec. 10 of the Ohio Constitution provides, among other things, that no person shall be twice put in jeopardy for the same offense.

The question as to when, and under what circumstances, a jury may be discharged before deliverance of its verdict, without affording the prisoner protection from further prosecution under the constitutional guaranty, is one which has been

given much consideration by the courts. The Federal and most, if not all, of the state constitutions provide that no person shall, for the same offense, be twice put in jeopardy. It has been said that the rule was announced by Lord Coke, thusly:

"To speak it here, once for all, if any person be indicted for treason, or for felony or larceny, and plead not guilty, and thereupon a jury is returned and sworn, their verdict must, be heard, and they can not be discharged."

At a very early time, however, and long before the adoption of any constitutional provision upon the subject in the state of Ohio, there had come to be recognized many "exceptions," so-called, to the doctrine that the discharge of the jury without the consent of the defendant in a criminal case, after the jury had been duly impanelled and sworn but before verdict, is equivalent to an acquittal of the accused. It became apparent that in the very nature of things the doctrine must be subject to many exceptions and in deference to the necessities of justice the strict rule has been greatly relaxed and the general modern rule is that the court may discharge a jury without working an acquittal of the defendant, in any case where the ends of justice, under the circumstances, would otherwise be defeated. The transition from the strict practice which anciently prevailed to the general modern rule upon the subject has resulted from a conception, gradually understood and enunciated because of the necessities arising from varied circumstances, over which neither court, parties nor counsel had any control but which rendered impossible the carrying forward of the trial according to established law and proceedure. For reasons imperative to the conduct of the defense of the accused, it was early recognized that the jury might be discharged before verdict with his consent, without bringing into operation the doctrine. For example: A witness for the accused might become so disabled or incapacitated by reason of sickness or accident that he be unable to attend the trial, in which event, in furtherance of justice to the accused, he might request and be granted a discharge of the jury and continuance of the trial. Examples might be multiplied of circumstances arising which would, in furtherance of justice to the accused, demand a departure from the strict rule; and gradually it came to be recognized that in further-

ance of justice to the state and for reasons of strict necessity exceptions to the strict rule were required and adopted.

From time to time reasons of necessity have been adjudged, sufficient to authorize the discharge of a jury without verdict and without the prisoner's consent; such as the sickness of the trial judge or of a juror or of the accused, or the escape of the accused, or the sudden illness of his counsel, or the contamination of a juror, or other accident or calamity.

Each time a new exception to the rule has been enunciated, it has been customarily said that the additional exception thus allowed, with those theretofore established, constituted the only cases in which a jury could be discharged before verdict without bringing into operation the doctrine enunciated by Lord Coke. Gradually, we think, it has come to be understood and generally adopted as the governing rule that any unforseen emergency, contingency or happening, after the impanelling of the jury, which will prevent the trial going forward according to orderly and established legal procedure, will be sufficient; for example, it has been held that the serious illness of the wife or child of a juror, the effect of which would necessarily tend to prevent the juror from exercising the sound discretion and deliberation required of a juror, is sufficient as creating a necessity for the discharge of the jury before verdict without having the effect of an acquittal of the accused.

Strictly speaking, there can be no such thing as an exception to the constitutional guaranty that a person shall not twice be put in jeopardy for the same offense. Neither the legislature nor the courts can deprive an accused of this constitutional guaranty. Therefore, strictly speaking, it can not be said there are any "exceptions" to the guaranty against double jeopardy. The force and effect of the constitutional provision, therefore, depends upon construction of the term "former jeopardy," and it must be apparent that the term is simply language used to denote a guaranty that one who has had a fair and impartial trial, according to law and established legal procedure, shall not again be placed upon trial for the same offense.

In Ohio the legislature, very early, adopted legislation upon the subject which, by various amendments, is now incorporated as §13443-18, GC, as follows:

"The court may discharge a jury without prejudice to the prosecution for the sickness or corruption of a juror, or other accident or calamity, or because there is no probability of such jurors agreeing, or if it shall appear after the jury has been sworn, that one of the jurors so sworn is a witness in the case, or by the consent of the prosecuting attorney and the defendant. The reason for such discharge shall be entered on the journal."

It may be said that the Constitution of Ohio upon the subject was adopted with full knowledge that under the common law the strict doctrine of former jeopardy had been so understood as to give recognition to the fact that circumstances might arise where, from the strict necessities of the situation, both in justice to the accused and in order that the state might discharge its solemn obligation to punish crime, a jury in a criminal case, after being impanelled and sworn, might be discharged by the trial court before verdict without prejudice to a new trial upon the same indictment.

Our Supreme Court, in a number of well-considered cases, has given support to this conclusion. In the case of Dobbins v State, 14 Oh St 493 at p. 500 of the opinion, Judge Ranney uses the following language:

"Whatever of doubt might once have existed in England, it is entirely certain that for nearly a century past the courts of that country have been in the constant habit of discharging juries in cases of necessity, and holding the accused for a further trial; and there is probably now no country in the world, where the jury trial is employed, that the state acknowledges its inability to punish crime, because insuperable obstacles have intervened to prevent a result upon the first attempt at a trial. On the other hand, it is perfectly well settled, that where the state intervenes, without such necessity, and prevents a verdict, the accused can not be subjected to a further trial, consistently with the constitutional guarantee, that he shall not 'be twice put in jeopardy for the same offense.' Const. of Ohio, Art. I, Sec. 10. This was distinctly admitted in Hurley's case, 6 Ohio Rep. 402, and was the ground of decision in Mount v State, 14 Ohio 304; Poage v The State, 3 Oh St, 238; People v Barrett, 2 Caine's R. 304; * * * It is the right of the state, and one of the most solemn and responsible of its duties, to punish crime; and it is the absolute right of any one accused of crime, to demand 'a speedy public trial by an impar-

tial jury,' and a verdict, declaring his guilt or innocence, according to the due course of law. The one is indispensably necessary to the safety of the community, and the preservation of peace and order, and the other for the protection of the innocent, and to prevent the oppression, which might otherwise be practiced, by those having charge of state prosecutions. The problem has always been to preserve intact both of these important rights; and the object has been completely accomplished, by holding the accused liable to answer until, in the regular course of judicial proceedings, the tribunal charged with the issue, without molestation or interference, has had the fullest and amplest opportunity to pass upon the question of his guilt; and by making every interference, on the part of the government, by which a verdict is prevented, while a reasonable hope remains that one may be rendered, an absolute bar to his further prosecution. * * *"

Perhaps the leading case in the state of Ohio dealing with the subject is that of Mitchell v The State, 42 Oh St, 383, wherein it is held in the second paragraph of the syllabus as follows:

"2. While a jury in a criminal case may, in certain circumstances, be discharged, and the accused lawfully subjected to another trial, this can only be done where he has consented to the discharge, or been guilty of such fraud in respect to the conduct of the trial as that he was in no real peril, or where there is urgent necessity for the discharge, such as the death or serious illness of the presiding judge or a juror, the serious illness of the prisoner, the ending of term before verdict, or the inability of the jury to agree, after spending such length of time in deliberation as, in the opinion of the judge, sustained by the facts disclosed in the record, renders it unreasonable and improbable that there can be an agreement."

Mitchell v The State, supra, recognizes and sustains the proposition that in a criminal case circumstances may arise whereby the jury may be discharged and the accused lawfully subjected to another trial. If it were not so, it would be necessary to hold that §13443-18, GC, and the preceding legislation upon the same subject are and were in contravention of the constitutional provision. It has been universally held that where an accused has been tried upon an indictment and convicted of an offense charged, and such conviction has been set aside either by the granting of a motion for a new trial interposed on be-

half of the defendant or upon proceedings prosecuted to a higher court to review such judgment, the first trial and conviction do not operate as an acquittal of the accused but do subject him to a new trial upon the same charge and under the same indictment, indicating very clearly, we think, that the constitutional provision is not to be interpreted as preventing an accused from being subjected to a retrial in all instances where a jury has been duly impanelled and sworn and trial had. Certainly it could not be said that the accused has not once been in jeopardy under the circumstances last above referred to; nor can it reasonably be said that an accused has not been once in jeopardy when he has been placed upon trial upon an indictment duly returned, the jury impanelled and sworn, the cause finally submitted to the jury, but the jury has failed to agree upon a verdict and the impossibility of agreement has been established. Yet no court has gone so far as to hold that under the circumstances related in the two instances last referred to, the accused must be deemed to have been acquitted and that under the constitutional guaranty he could not again be placed upon trial for the same offense.

In the first of these two instances, that is, where the verdict of the jury has been set aside and a new trial granted, or the judgment of conviction has been set aside upon proceedings instituted by the accused for that purpose, the accused may not urge the plea of former jeopardy by reason of the fact that he has consented and requested a new trial and thereby waived the protection of the constitutional guaranty; but it is not so where the jury has been discharged because they have been unable to agree, and in the latter case it would clearly appear that a strict interpretation of the constitutional provision would prevent the accused being placed again on trial for the same offense. And so in the many instances wherein the courts have held that sickness or accident to a juror, to the court, to the accused, and even to one nearly related to a juror, or other calamity, has been sufficient as showing an absolute necessity for the discharge of the jury before verdict without the consent of the accused, he may, nevertheless, be again placed upon trial for the same offense without violating the constitutional provision.

Undoubtedly it has been the rule in Ohio, long established and well recognized, that, in the absence of consent by the accused or urgent necessity, a jury once impanelled and sworn in a criminal case can not be discharged before verdict without affecting an acquittal of the accused and preventing him from again being placed upon trial for the same offense. This rule is laid down in Poage v State, 3 Oh St, 229, and reaffirmed in Mitchell v State, **supra,** at p. 394, as follows:

"That the power to discharge is a most responsible trust, and to be exercised with great care, is too obvious to require illustration. 'It is a discretion,' said Mr. Justice Story, 'to be exercised only under very extraordinary and striking circumstances.' 2 Gall. 364. 'The power,' said the same judge, 'ought to be used with the greatest caution, under urgent circumstances, which would render it proper to interfere.' U. S. v Perez, 9 Wheat. 580. 'I am of opinion,' said Chief Justice Spencer, 'that, although the power of discharging a jury is a delicate and highly important trust, yet that it does exist in case of extreme and absolute necessity.' People v Goodwin, 18 Johns. 187. That the discretion is a 'legal discretion, and to be exercised according to known rules,' was expressly held in McKee's case, 1 Bailey, 651, recognized in **Mount v State, 14 Ohio, 304.'** P. 238."

Many cases could be cited to like effect.

Applying the rule to the case at bar, we find that the accused had entered a plea to the indictment against him of "not guilty by reason of temporary insanity." It is claimed by his counsel that the word "temporary" is mere surplusage, but it can be readily conceived that the word was not used inadvisably or without import by counsel. No such plea is authorized under the statute of Ohio. The accused may plead "not guilty by reason of insanity," and if acquitted upon this ground he is presumed to be insane at the time of the verdict and until such presumption has been set aside in a proper proceeding.

When we consider the opening statement of counsel for the accused to the jury, we are not so blind as not to perceive that the pea as tendered was entered in contemplation that immediately upon the return of a verdict of "not builty by reason of temporary insanity," the accused would file an application for a writ of habeas corpus and thus effect the discharge of the defendant by proof that at the time of the verdict and the application for the writ he was not insane. Nevertheless, counsel for the accused, either by design or by accident, in effect represented to the jury that the accused wou d necessarily be confined in an institution for the insane

and would not be permitted to be at large in the event the jury should return a verdict of "not guilty by reason of temporary insanity." The plea should not have been received, but it was his own plea, and by his action and that of his counsel it may properly be said that he consented to a discharge of the jury when his counsel misrepresented the effect of an acquittal under his plea.

Can it be said that the guarantee of the Constitution was intended to permit an accused to perpetrate such misrepresentation in the trial of his case as would in the opinion of the trial court, in the exercise of a sound legal discretion, prevent a fair and impartial trial? If the accused may avail himself of such plea in the instant case, it may readily be seen that an accused, either personally or by his counsel, may be guilty of all manner of fraud, deceit and misrepresentation by which the state would, undoubtedly, be prevented from having a fair and impartial trial; yet nothing could be done about it. We refuse to subscribe to any such doctrine.

We find and hold that under the circumstances in this case it was the province of the trial court, in the exercise of a sound legal discretion, to declare a mistrial, discharge the jury, and cause a new jury to be impanelled to try the accused upon the indictment returned against him. .

The statute expressly requires the trial court to admonish the jury that they have nothing to do with the punishment which shall be imposed upon the accused in the event of a verdict of guilty; yet it is apparent that the statements of counsel for the accused expressly called upon the jury and importuned it to return a verdict of "not guilty by reason of temporary insanity" instead of a verdict of "guilty" and assured the jury that in the event their verdict was in accordance with his plea the defendant would not be allowed to run at large but would be confined in an institution for the insane.

We find and hold that in the exercise of a sound discretion by the trial court no error intervened in the withdrawal of a juror, in the sustaining of the demurrer to the plea of former jeopardy, or in proceeding with the trial to the jury which was subsequently impanelled and sworn.

No error prejudicial to the rights of the accused having intervened and it appearing that substantial justice has been done the accused, it follows that the judgment of the Common Pleas Court must be, and the same is, affirmed.

CARTER and BENNETT, JJ, concur in the judgment.