THE STATE OF OHIO, APPELLEE, *v.* SCOTT, APPELLANT.

[Cite as State *v.* Scott (1986), 26 Ohio St. 3d 92.]

(No. 85-1209—Decided August 20, 1986.)

*John T. Corrigan,* prosecuting attorney, *George J. Sadd, William E. Gerstenslager* and *Ann T. Mannen,* for appellee.

*Hyman Friedman,* county public defender, *Marillyn Fagan Damelio* and *Robert Ingersoll,* for appellant.

*Per Curiam.* In order to determine the propriety of the death sentence imposed on appellant, we are required to undertake a three-prong analysis. First, we must answer the specific issues raised by the appellant with respect to the proceedings below. Second, we must independently weigh the aggravating circumstances in this cause against any factors which mitigate against the imposition of the death sentence. Last, we must independently consider whether appellant's sentence is disproportionate to the penalty imposed in similar cases.

In his first proposition of law, appellant contends that the trial judge wrongfully abused his discretion in refusing to declare a mistrial pursuant to a joint motion made by both parties. This contention is premised upon the following comments made by the trial judge during voir dire:

"[THE COURT]: Now ladies and gentlemen, I have given you about as much as the Court really knows about the case, and there has been some—I know, some publicity or notoriety about it at the time that it occurred. I only know that because I happened to see an article printed in the newspaper at the time. You know that the victim is Vinnie Price [*sic*], and it's the Court's understanding that she was a storekeeper, and that the allegations concerning the robbery apparently occurred at her store.

"Mr. Gerstenslager, do you have an idea of the neighborhood in which the store—the address of the store; I don't—

"MR. GERSTENSLAGER [assistant prosecutor]: 84th [*sic*] and Quincy.

"THE COURT: 84th [*sic*] and Quincy. Not only was Mr. Scott—at least from the newspaper reports that I think that I had read—was involved in this, there were three other—

"MR. EISNER [defense counsel]: Objection—

"THE COURT: —individuals who—pardon?

"MR. EISNER: Your Honor, I object.

"THE COURT: Come to the sidebar."

Shortly after this statement was made, defense counsel moved the

court for a mistrial on the basis that the court's mention of a report linking the defendant to the crime for which he was charged irreparably tainted the prospective jurors. Counsel for the prosecution "reluctantly" joined the motion for mistrial. The court overruled the joint motion for mistrial, but administered a lengthy cautionary instruction to the prospective jurors stressing that their judgment must be based solely upon the evidence adduced at trial. The judge also cautioned the jurors against being unduly influenced by any remarks the court may have made.

Pursuant to R.C. 2945.36(D), a trial judge may discharge a jury without prejudice to the prosecution by the consent of the prosecuting attorney and the defendant. However, this action is subject to the discretionary judgment of the trial judge. *State v. Sallee* (1966), 8 Ohio App. 2d 9 [37 O.O.2d 5]; *State v. Palmieri* (App. 1938), 28 Ohio Law Abs. 398, appeal dismissed (1939), 135 Ohio St. 30 [13 O.O. 526]. In *State v. Wade* (1978), 53 Ohio St. 2d 182 [7 O.O.3d 362], this court set forth the following analytical criteria to determine whether a trial judge's remarks were prejudicial so as to require a mistrial:

"(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they were made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." *Id.* at 188.

When analyzed under this test, the trial judge's comments do not appear to require the declaration of a mistrial. The judge's alleged prejudicial comment was made at a point when the court was examining prospective jurors regarding their exposure to pretrial publicity. The judge's comment did not concern the appellant's guilt or innocence but, rather, noted the fact that the news media had reported appellant's involvement with the crime. Thus, the remark at issue, when analyzed in light of the circumstances under which it was made, did not cast an aspersion upon appellant's innocence.

Further, the lengthy instruction which the trial judge gave to the prospective jurors after issuing this comment was such as to minimize any prejudicial effect this comment may have had upon the jurors.

Therefore, we find that appellant's first proposition of law is without merit.

In his next proposition of law, appellant argues that the trial court wrongfully excluded prospective jurors who expressed some opposition to the imposition of the death penalty, but did not state unequivocally that under no circumstances would they follow the court's instructions in this regard.

Appellant initially argues that pursuant to this court's decision in *State v. Jenkins* (1984), 15 Ohio St. 3d 164, 180, a juror must express an ir-

revocable commitment to vote against the death penalty regardless of the circumstances and facts of the case in order to be properly excluded under R.C. 2945.25(C). This is said to be a more stringent test than is required under the United States Constitution pursuant to *Wainwright* v. *Witt* (1985), 469 U.S. ____, 83 L. Ed. 2d 841.

Appellant's initial premise that *Jenkins* requires a more stringent test than is required pursuant to *Witt* is misplaced. The *Jenkins* decision was predicated upon an earlier United States Supreme Court case, *Witherspoon* v. *Illinois* (1968), 391 U.S. 510 [46 O.O.2d 368], wherein the court established the following two-part test to determine whether a prospective juror may be removed based upon his objection to the imposition of the death penalty:

"* * * (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*. * * *" (Emphasis *sic*.) *Id*. at 522-523, at fn. 21.

The United States Supreme Court reestablished and somewhat clarified the *Witherspoon* standard in *Wainwright* v. *Witt, supra*. Therein, the court at 852 dispensed with the reference to " 'automatic' " decision making and the " 'unmistakable clarity' " standards of *Witherspoon*. Instead, the *Witt* court held that the proper standard was "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath.' " *Id*. at 851-852.

In *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 178, this court reevaluated *Jenkins* in light of the United States Supreme Court's modification of the *Witherspoon* standard in *Witt*. The *Rogers* court concluded that the *Witt* standard was applicable to this jurisdiction. *Rogers* is currently on remand to this court for review of issues unrelated to the matter at hand. Accordingly, *Rogers* is dispositive of this issue.

The testimony of each of the excluded jurors demonstrates that their views on the death penalty would prevent or substantially impair the performance of their duties in accordance with their instructions and oath.[1]

---

[1] The first prospective juror alleged to have been wrongfully excluded is Helen Funtash. A review of the trial transcript reveals that Funtash was not dismissed on the basis of her objection to the death penalty, but due to the fact that her daughter was going to be married within the month. The trial judge opined that the proximity of this event to the trial would hinder Mrs. Funtash's ability to serve as an effective juror. Hence, any objection as to the death qualification of this witness is misplaced.

The court's examination of prospective juror George Laskowski elicited the following:

"THE COURT: Counsel, the question is: If the Court—let me just go back and rephrase it myself.

"The question should be: If, after listening to the evidence presented by the parties, and there is a finding by the jury beyond a reasonable doubt that the aggravating circumstances

The fact that the defense counsel was able to elicit somewhat contradictory viewpoints from these jurors during his examination does not, in and of itself, render the court's judgment erroneous.

The *Witt* court noted that "* * * there will be situations where the trial judge is left with the definite impression that a prospective juror

---

outweigh the mitigating circumstances, and the imposition of the death sentence—the recommendation is the appropriate sentence, could you make that recommendation?

"MR. LASKOWSKI: No, I couldn't.

"THE COURT: You could not?

"MR. LASKOWSKI: No, I could not."

In regard to the exclusion of prospective juror Duane Beck, the following testimony reveals that Beck harbored such deep misgivings about the imposition of the death penalty that it would impair his judgment during the guilt/innocence phase of the trial:

"THE COURT: * * * follow those instructions?

"So that if there was a verdict of guilty, and the panel then was considering the sentencing aspect of it, would you be able to join with your fellow jurors, if there was a finding that beyond a reasonable doubt the aggravating circumstances and factors outweighed the mitigating circumstances and factors, and return a verdict that recommended the imposition of the death penalty, and sign such a verdict?

"MR. BECK: That would be extremely difficult for me to do.

"THE COURT: Would you be able to do it?

"MR. BECK: I don't know. I, frankly, don't know whether I could or not.

"* * *

"* ↓ ↑ I would just have a real tough time following your instructions.

"MR. GERSTENSLAGER [assistant prosecutor]:

"All right.

"And then carrying it even further, knowing your background in psychology and your feelings about character disorders and the relationship to insanity, which is a legal term which you [*sic*] not familiar with, but carrying that further, say, when it comes time to decide punishment, and say you have already, with the rest of the jurors, found the man guilty, would you have trouble considering in the same light, fairly, impartially, the evidence of aggravated [*sic*] circumstances which tend to show that the death penalty is appropriate versus the mitigating circumstances which tend to show the death penalty is not appropriate—

"MR. EISNER [defense counsel]: Objection—

"MR. GERSTENSLAGER: —would you—

"THE COURT: No. He may respond.

"MR. GERSTENSLAGER: —would you consider those two sets of factors in equal light, knowing—

"MR. BECK: To the best of my ability, if the evidence indicated guilty.

"MR. GERSTENSLAGER: All right.

"But your big problem would be finding him guilty in the first place?

"MR. BECK: I think so."

Upon inquiry by the prosecution and court, prospective juror Kimberly Jones demonstrated an inability to follow the instructions of the court in regard to the imposition of the death penalty in the following responses.

"MR. GERSTENSLAGER: So the possibility could be there for a death penalty verdict, okay?

"MISS JONES: Uh-huh.

"MR. GERSTENSLAGER: All right.

"Now, in the first place—

"MISS JONES: I would say I would just give him life.

"* * *

would be unable to faithfully and impartially apply the law. * * * [T]his is why deference must be paid to the trial judge who sees and hears the juror." *Id.* at 852-853. Accordingly, appellant's proposition concerning the exclusion of these prospective jurors is overruled.

Appellant asserts, in his next proposition of law, that the trial court failed to properly exclude four prospective jurors whose pro-death penalty convictions rendered them unfit to properly serve in a capital offense case.

In our view, this failure cannot be said to have prejudicially affected the outcome of this trial since none of these jurors served on the panel that tried the instant case. As noted by the court of appeals below, three of these jurors, Mark Moravcik, Joseph Nemeth and Richard Stasienko were dismissed upon other grounds. Lance Bradesku was excused pursuant to a peremptory challenge by defense counsel. Moreover, the defendant did not exhaust his available peremptory challenges before expressing satisfaction with the jury. Hence, appellant may not argue that the use of a peremptory challenge to exclude Bradesku prejudicially affected his defense.

In his next proposition of law, appellant contends that the trial court, in an instruction to the jury, wrongfully expanded the statutory definition of reasonable doubt, thereby diminishing the requisite burden of proof.

The instruction giving rise to this alleged error followed a reading of the statutory definition of "reasonable doubt" as contained in R.C. 2901.05(D). The trial judge then stated:

"All of the evidence should be examined carefully and conscientiously by you, and, if after a full and impartial consideration of all the evidence, you are firmly convinced beyond a reasonable doubt of the truth of the charge or charges, then the State has proved its case and you must find the defendant guilty.

"If you are not firmly convinced of the truth of the charge, then the State has not proved its case and you must find the defendant not guilty.

"Now, you are the exclusive determiners of the facts. In determining

---

"MR. GERSTENSLAGER: All right.

"So you would not be able to treat the evidence fairly because you feel the death penalty is too harsh a punishment?

"MISS JONES: You are right, yes.

"* * *

"THE COURT: You would not?

"Let me just ask another question so that we can get a little bit further understanding.

"Are you telling me, unequivocally, that under no circumstances will you follow my instructions as the Judge, and you cannot and will not consider fairly the imposition of the death sentence, if appropriate, in this case; is that what you are saying?

"MISS JONES: Yes.

"THE COURT: Do you want to tell my [sic] why? Is there anything that you can say that would clarify that answer—

"MISS JONES: No. I just—like I said, I just wouldn't want to.

"THE COURT: You have just decided that you do not want to oppose [sic impose] the death penalty?

"MISS JONES: I say that I just wouldn't want to."

the facts and ascertaining whether or not the prosecution has met the requirement of proof beyond a reasonable doubt, you must base your conclusion only upon evidence introduced at trial. * * *''

Before addressing the merits of this proposition, it is noteworthy that appellant did not object to this instruction when it was administered at trial. Under this court's holding in *State* v. *Fanning* (1982), 1 Ohio St. 3d 19, the failure to object to an error at the time of trial constitutes a waiver of any alleged error that may have resulted from the court's instruction. Hence, this instruction must be reviewed under the plain error standard.

In addressing the merits of this claim, we find that pursuant to *State* v. *Sargent* (1975), 41 Ohio St. 2d 85 [70 O.O.2d 169], an amplification of the statutory definition of reasonable doubt must be erroneous and prejudicial to the complaining party before the trial court's judgment will be reversed.

Appellant argues that the language of the contested instruction in the case at bar was similar to the language utilized to amplify the burden of proof by trial courts in *State* v. *Seneff* (1980), 70 Ohio App. 2d 171 [24 O.O.3d 215], and later in *State* v. *Swanson* (1984), 16 Ohio App. 3d 375. In *Seneff*, the reviewing appellate court warned the trial court not to expand on the statutory language of R.C. 2901.05(D); however, the court did not find prejudicial error. The *Swanson* court reviewed the same amplification language as used in *Seneff*, and reversed the trial court's conviction noting that the warning in *Seneff* had gone unheeded.

Appellant's reliance on these precedents is misplaced. The language utilized in *Seneff* and *Swanson* depicted a far more confusing and expansive definition of reasonable doubt than in the case at bar. Further, in *State* v. *Drake* (Feb. 21, 1985), Cuyahoga App. No. 48640, unreported, the same court that decided *Swanson* specifically limited that decision to the facts of that case. A review of the contested instruction in the instant case reveals that it does not misstate the appropriate quantum of proof. In addition, appellant has not sustained his burden of demonstrating actual prejudice. Therefore, we find appellant's contentions in this regard to be unmeritorious.

Next, appellant accuses the trial court of error in refusing to administer defense counsel's requested jury instructions. Prior to closing argument, defense counsel apparently requested the court to give special jury instructions on the credibility of testimony of addict-informers, informer co-defendants, and accomplices. The trial court refused defense counsel's request and issued its own instructions to the jury.[2]

---

[2] The trial court instructed the jury as follows:

"Now, during the trial, you heard considerable discussion as to the actions of other persons. If they acted improperly, charges could be brought against them, but the only person on trial here is the defendant, and the sole purpose of this lawsuit is to determine whether the defendant is guilty or not guilty. It is not to determine the guilt or the innocence of other

This court has held that it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge. *State* v. *Nelson* (1973), 36 Ohio St. 2d 79 [65 O.O.2d 222]. However, the court need not administer the requested order in the exact language presented. *Id.* at 84. Further, the court may refuse to give an instruction as to a matter which is not applicable to the facts governing the case. *Romeo* v. *State* (1931), 39 Ohio App. 309.

With regard to the instructions concerning the testimony of informer co-defendants and accomplices, appellant cites a number of federal decisions which stand for the appropriateness of such guidance to the jury. However, appellant fails to note the fact that federal judges are authorized to comment upon the evidence when their comments may be said to assist the jury in evaluating evidence. In Ohio, trial judges are forbidden "* * * [t]o single out one witness, or a number of witnesses, for either the prosecution or the defense, and to discuss their credibility * * *." *Curtis* v. *State* (1925), 113 Ohio St. 187, 209-210. Such a practice is considered as placing undue influence upon the jury.

As to the requested instruction concerning the credibility of addict-informers, there was no evidence adduced at trial which substantiated that Ricky Tramble was addicted to drugs at the time of his testimony. Even under federal law, a trial judge has no reason to comment on the credibility of narcotics addicts unless their addiction continues at the time of their testimony. *United States* v. *Howard* (C.A. 4, 1979), 590 F. 2d 564, 570.

On a final note, we observe that the instruction which was administered by the trial judge advised the jury to consider the motive behind a witness' testimony when judging the credibility of that witness. We believe that this instruction sufficiently apprised the jury of the importance of considering motive when determining credibility.

---

persons on other charges; however, in weighing the testimony, you may consider their motive as going to the weight of their testimony, but we are only trying the case of this defendant. "* * *

"Now, an accomplice is one who purposely and knowingly assists and joins another person in the commission of a crime. The testimony of witnesses whom you find to be accomplices should be considered together with all the other facts and circumstances in evidence, and by applying the general rules of credibility of witnesses, you will determine if his testimony is worthy of belief; whether Danny Jones and Edward O'Neal were accomplices, and the weight that you give to their testimony are matters that you must determine.

"The testimony of witnesses whom you find to be accomplices should be considered the same as other witnesses; however, no person, that is, the defendant, shall be found guilty of criminal charges only upon the testimony of accomplices. The testimony of accomplices must be supported by other credible, believable evidence."

It is noted that the specific requested instructions, preserved in the record as court's exhibits 6, 7 and 8, are captioned "Testimony of Informer (Co-Defendant)," "Testimony of Informer," and "Testimony of Addict-Informer," respectively.

Appellant next argues that the trial court wrongfully instructed the jury with regard to its definition of mitigating circumstances. In this respect, the court charged the jury:

"Now, mitigating circumstances include, but are not limited to, the nature and circumstances of the offense, the history, character and background of the offender, and any or all of the following factors, and these are taken directly from the statute and adopted by the Legislature: The defendant's level of intelligence and how that affected his judgment to get involved in criminal activity; the defendant's level of intelligence and how that affected his judgment inside and outside the delicatessen that day; the defendant's relative chronological and psychological age; the defendant's family upbringing and whether that affects his ability to make decisions and to project into the future; and any other factors which you find to exist from the evidence in mitigation of the sentence of death."

Appellant contends that this instruction is insufficient on the grounds that it misstates the statutory definition contained in R.C. 2929.04(B), and does not identify appellant's claim of innocence or the state's alleged inability to produce evidence of guilt beyond all doubt as a mitigating factor in this case. Appellant submits that this constitutes reversible error pursuant to *Miller* v. *State* (1932), 125 Ohio St. 415.

We find that appellant's reliance on *Miller* is misplaced. In our view, *Miller* stands for the principle that the trial court must instruct as to all elements necessary to a finding of guilt. The contested instruction in the instant case concerns the mitigating factors which go to sentencing, not to the element of a crime signifying guilt. Furthermore, appellant's claim of innocence in this matter is not a mitigating factor specifically enunciated in R.C. 2929.04. Lastly, we find that the trial court's instruction advised the jury that they were not bound by the listed factors, all of which were specified under R.C. 2929.04(B), but could consider any other mitigating factors which they may find.

Appellant next alleges that there was insufficient evidence before the jury to support the verdict of guilty as to each of the offenses charged. Specifically, appellant questions the sufficiency of the evidence necessary to establish an aggravated robbery or appellant's involvement in the killing of Vinnie Prince.

Generally, a reviewing court will not reverse a verdict where the jury could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340]. In reviewing the legal sufficiency of the evidence to support a jury verdict, it is the minds of the jurors, rather than a reviewing court, that must be convinced. *State* v. *Thomas* (1982), 70 Ohio St. 2d 79 [24 O.O.3d 150]. In applying this standard of review, the question of credibility of conflicting testimony and the weight to be accorded certain evidence are matters primarily left to the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366].

Looking to the evidence in support of an aggravated robbery conviction under R.C. 2911.01, we note that an attempt to commit armed theft constitutes aggravated robbery. In a signed statement given to the police, Danny Jones repeatedly admitted that the motive for going to the V & E Delicatessen was to perpetrate an armed robbery of that establishment, although he later attempted to recant this assertion at trial. This felonious objective is evidenced by the secretive manner in which Jones parked his car around the corner after dropping off appellant and O'Neal. Of further relevance is the fact that appellant was aware of a pending robbery charge against him upon his apprehension. Such evidence, in our view, provides an ample basis to support the jury's verdict in this regard.

As to appellant's involvement in the murder of Vinnie Prince, this finding was amply supported by the testimony of Danny Jones, Edward O'Neal, Ricky Tramble and the corroborative testimony of three independent witnesses near the scene of the crime. The fact that some of these witnesses were either involved with the actual crime or were promised leniency for their testimony is properly a consideration for the trier of fact. Therefore, we reject appellant's assertions in this regard.

Appellant also attacks the trial court's sentencing instruction on the basis that it improperly diminished the jury's responsibility for imposition of the death penalty.

Once again, it is apparent that appellant did not object to this instruction at trial. As a result, any error involved with this instruction may be deemed waived. *State* v. *Fanning, supra.*

Nevertheless, appellant may still argue that this instruction constitutes plain error under Crim. R. 52(B). Under this court's holding in *State* v. *Long* (1978), 53 Ohio St. 2d 91 [7 O.O.3d 178], a defective jury instruction is not plain error unless "the outcome of the trial clearly would have been otherwise" if the error had not occurred. *Id.* at 97. Further, pursuant to R.C. 2929.05(A), appellate review of a capital offense is to be carried out in the same manner as other criminal cases.

In support of this proposition, appellant relies primarily on the United States Supreme Court's recent decision in *Caldwell* v. *Mississippi* (1985), 472 U.S. ___, 86 L. Ed. 2d 231, where the court reviewed a prosecutor's comments urging the jury not to view itself as determining whether the defendant would die because any death sentence would be reviewed for correctness by the state supreme court. The court concluded that the prosecutor's comment warranted reversal in that it was inaccurate "* * * both because it was misleading as to the nature of the appellate court's review and because it depicted the jury's role in a way fundamentally at odds with the role that a capital sentencer must perform. * * *" *Id.* at 243-244.

However, the *Caldwell* decision concerned a prosecutor's misstatement of the law as opposed to a trial court's instruction to a jury. Such a situation was directly addressed by the United States Supreme Court in *California* v. *Ramos* (1983), 463 U.S. 992. Therein, the court reviewed a

jury instruction advising the jury that the governor had the authority to commute a life sentence without the possibility of parole, so parole would be possible. In upholding this instruction, the *Ramos* court at 1012-1013 reasoned:

"* * * [T]he State is constitutionally entitled to permit juror consideration of the Governor's power to commute a life sentence. This information is relevant and factually accurate and was properly before the jury. * * *

"* * * It does not preclude individualized sentencing determinations or consideration of mitigating factors, nor does it impermissibly inject an element too speculative for the jury's deliberation. Finally, its failure to inform the jury also of the Governor's power to commute a death sentence does not render it constitutionally infirm. Therefore, we defer to the State's identification of the Governor's power to commute a life sentence as a substantive factor to be presented for the sentencing jury's consideration."

In the cause *sub judice,* the trial judge instructed the jury in relevant part as follows:

"A jury recommendation to the Court that the death penalty be imposed is just that—a recommendation.

"* * *

"* * * [Y]ou will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court. Your recommendation to the Court shall be one of the following: That Jay Scott be sentenced to life imprisonment with parole eligibility after 20 full years of imprisonment; or Jay Scott be sentenced to life imprisonment with parole eligibility after 30 full years of imprisonment.

"This particular recommendation which you make is binding upon the Court, and I, the Judge, must impose the specific life sentence which you recommend."

This instruction precisely sets forth the capital punishment sentencing procedure as codified in R.C. 2929.03(D)(2). In *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 144, this court found that a jury instruction which presented an accurate description of the sentencing procedure embodied in R.C. 2929.03(D)(2) was not constitutionally infirm. Accordingly, this proposition of law is without merit.

Appellant next attacks the appropriateness of the death sentence in the case at bar. First, appellant asserts that the trial judge improperly weighed the aggravating circumstances against the mitigating factors and failed to include the requisite findings under R.C. 2929.03(F).

R.C. 2929.03(F) requires the trial court to file a separate opinion, stating:

"* * * [I]ts specific finding as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances

the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. * * *"

A review of the trial court's sentencing opinion, filed April 17, 1984, reveals that the court identified appellant as the principal offender of the aggravated murder of Vinnie Prince while attempting to commit aggravated robbery. The court went on to note that appellant did not present any of the mitigating circumstances as set forth in R.C. 2929.04, but utilized the sentencing proceeding to present oral testimony denying he committed the crime or that he was present at the time the victim was killed. The court ultimately concluded that the aggravating circumstances outweighed the mitigating factors based upon its consideration of:

(1)   the evidence presented at trial;

(2)   the jury's verdict of guilty beyond a reasonable doubt that defendant committed aggravated murder with specifications and of the second count of aggravated robbery;

(3)   the defendant's unsworn statement to the jury; and

(4)   the arguments of counsel.

Appellant's proposition here appears to be without basis. In the first place, appellant did not present any of the specified mitigating circumstances in R.C. 2929.04. However, pursuant to this court's decision in *State* v. *Buell, supra,* at 142, a defendant's proclamation of innocence during the sentencing hearing constitutes a relevant factor, under R.C. 2929.04(B)(7) and (C), as to the issue of whether the sentence of death should be imposed. It would appear that this court's consideration of this factor should take into account the jury's verdict on this matter. It is also noteworthy that a capital offense does not involve a higher burden of proof than is necessary in any other criminal case. *State* v. *Jenkins, supra,* at paragraph eight of the syllabus; *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, paragraph six of the syllabus. In view of these considerations, appellant's claimed innocence in this matter is not a sufficient factor to outweigh the established aggravating circumstances.

In addition, a review of the appellate court's judgment in this matter demonstrates that it fully complied with the requisites of R.C. 2929.03(F). In *State* v. *Maurer, supra,* this court held that although the trial court failed to comply with the requisites of R.C. 2929.03(F), the fact that the reviewing appellate court fulfilled all of the requirements imposed, coupled with this court's own independent review, rendered such error harmless. *Id.* at 247. Thus, even if the trial court did not sufficiently comply with the requisites of R.C. 2929.03(F), the subsequent review by the court of appeals and this court would appear to render any resulting error harmless beyond a reasonable doubt.

At this point, the parties refer to evidence relevant to this court's independent review of a death sentence pursuant to R.C. 2929.05. The following evidence supports the jury's finding that appellant was the prin-

cipal offender of the aggravated murder of Vinnie Prince while attempting to commit aggravated robbery: (1) Danny Jones' signed statement to the police that the purpose of entering the store was to commit armed robbery, (2) the secretive manner in which appellant's accomplices parked the car when appellant was in the store, (3) appellant's awareness of a reported robbery when he was arrested in Pennsylvania, (4) the testimony of Jones, O'Neal and Tramble implicating appellant as killing Vinnie Prince, (5) the corroborating testimony of the independent witnesses near the scene of the crime, and (6) the absence of any evidence to provide an alternative explanation of the shooting.

Looking to this court's independent weighing of the aggravating and mitigating factors, it is most noteworthy that appellant does not raise any of the circumstances specifically set forth in R.C. 2929.04(B). As discussed earlier, appellant's attempt to question the certainty of the evidence convicting him at the sentencing stage constitutes a relevant factor under R.C. 2929.04(B)(7), but such factor should be considered in conjunction with the jury's findings in this regard. It should be noted that appellant expressly disclaimed any remorse for his actions when he discussed the killing with his companions. Finally, the testimony of Edward O'Neal discloses that he did not perceive the victim to have made any movement as if to go for a weapon. This perception was corroborated by the results of a trace metal test which indicated that Prince had not handled or fired a weapon prior to her death. Hence, appellant's contention that his act was in response to an aggressive action by the victim is wholly unsupported by the record.

Based upon the preceding, appellant's claim of innocence in this regard does not manifest a factor which may be said to outweigh the aggravating circumstance that appellant, while in the act of attempting to commit armed robbery, shot and killed Vinnie Prince at a distance estimated to be less than twelve inches.

Lastly, this court must consider the proportionality of the death sentence in this cause as compared to those imposed in similar crimes. Appellant cites numerous cases where the defendants were found to have either killed or attempted to kill a person while in the commission of aggravated robbery. The defendants in these cases, appellant contends, only received life sentences as opposed to the death penalty. This comparison is said to demonstrate that the death sentence in the case at bar is disproportionate with sentences imposed in similar situations.

The appellee state points out that many of the cases which appellant cited involved negotiated guilty pleas. Moreover, a comparison of sentences in similar crimes does not accurately demonstrate a disproportionate impact without reference to all aspects of the crimes. *State* v. *Maurer, supra,* at 245-246.

In *State* v. *Martin* (1985), 19 Ohio St. 3d 122, this court upheld the imposition of a death sentence where the defendant was found guilty of the

aggravated robbery and aggravated murder of a store owner with the specification of being the principal offender of the aggravated murder while committing or attempting to commit aggravated robbery. In that case, the defense elicited testimony from the defendant's mother and grandmother regarding the defendant's underprivileged childhood in an attempt to establish factors to mitigate the aggravating circumstance. We concluded that such factors were insufficient to outweigh the aggravating factor of the case. The *Martin* case presents a somewhat similar situation to the case at bar. Nevertheless, as previously established, the only mitigating factor appellant asserts is his claimed innocence. Based on this court's decision in *Martin,* which was found not to be disproportionate with the sentences in *State* v. *Jenkins, supra, State* v. *Maurer, supra,* and *State* v. *Rogers, supra,* we find that the death sentence in the case *sub judice* is not disproportionate with similar cases.

In his next proposition of law, appellant asserts that R.C. 2929.04(A)(7) is unconstitutional in that the aggravating circumstance of felony-murder merely duplicates an element of the felony. This proposition has been specifically rejected by this court. *State* v. *Jenkins, supra.*

Next, appellant questions the constitutionality of the death qualification process in a capital case.

Again, this specific proposition has been addressed and rejected in *State* v. *Jenkins, supra,* at paragraph two of the syllabus, and *State* v. *Maurer, supra,* at paragraph two of the syllabus.

Appellant further alleges that a prosecutorial comment on the fact that appellant chose to make an unsworn statement to the jury during the sentencing phase of the trial and a jury instruction which called further attention to the unsworn nature of this statement violated his right to a fair trial.

This proposition concerns appellant's statement to the jury during the sentencing phase of the trial. Defense counsel thereafter made a motion *in limine* to prevent the prosecutor from commenting upon the unsworn nature of this testimony. The court ruled that the prosecutor could "comment on the credibility of the defendant who chose to make an unsworn statement." During closing argument, the prosecutor made reference to the unsworn nature of this statement and the fact that he was unable to cross-examine the defendant. At the conclusion of the trial, the trial court instructed the jury that "* * * [y]ou are not required to believe the testimony of any witness simply because he was under oath." This instruction is said to imply a negative inference of untruthfulness to be drawn from an unsworn form of testimony.

We find this alleged error to be without basis. In *State* v. *Jenkins, supra,* this court examined a situation where the prosecutor referred to the unsworn nature of the defendant's testimony during the sentencing hearing in violation of a previously granted motion *in limine* preventing such a reference. The *Jenkins* court stated at 217:

"\* \* \* We perceive no prejudice here. The prosecutor said nothing more than what the jury already knew to be true, namely, that all other defense witnesses testified under oath and that appellant did not. So, even though he failed to keep his word and violated the order *in limine,* under the circumstances here, we find his utterances harmless and completely innocuous."

In the instant cause, the prosecutor's comment that appellant's unsworn statement had less evidentiary value than the earlier formal testimony of other witnesses is similar to the comment addressed in *Jenkins.* Moreover, in this case, the comment was not in violation of a motion *in limine.* Addressing the alleged "prejudicial effect" of the court's instruction, appellant's negative inference argument is far too speculative upon which to premise a valid constitutional argument.

Appellant next contends that the jury was improperly instructed during the sentencing phase as to considerations of mercy, compassion and sympathy.

At the conclusion of the penalty phase, the trial court instructed the jury:

"You must not be influenced by any consideration of sympathy or prejudice. It is your duty to carefully weigh the evidence, to decide all disputed questions of fact, to apply the instructions of the Court to your findings, and to render your verdict accordingly. In fulfilling your duty, your efforts must be to arrive at a just verdict. Consider all the evidence and make your finding with intelligence and impartiality, and without bias, sympathy or prejudice, so that the State of Ohio and the defendant will feel that their case was fairly and impartially tried."

It is apparent that appellant did not object to this instruction at trial. Hence, pursuant to *State* v. *Fanning, supra,* this error need not be considered absent plain error. In *State* v. *Jenkins, supra,* this court reviewed a similar jury instruction advising the jury to exclude bias, sympathy or prejudice from consideration during the penalty phase of the trial. We stated at 192 that this instruction "\* \* \* is necessary and entirely consistent with the·view expressed by the United States Supreme Court in *Barclay* v. *Florida, supra* [(1983), 463 U.S. 939], at 1144, that, '[t]he thrust of our decisions on capital punishment has been "that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." \* \* \*.' " (Citations omitted.)

Therefore, we find this proposition to be without merit.

Appellant further asserts that R.C. 2903.01(D) requires the jury to make a specific finding as to specific intent to kill before convicting any defendant of a crime which carries the possibility of the death penalty.

This proposition was previously addressed and rejected in *State* v. *Jenkins, supra,* at paragraph nine of the syllabus, and *State* v. *Maurer, supra,* at paragraph five of the syllabus.

Appellant next argues that the requirement of unanimity in recom-

mending a life sentence denies a capital defendant his right to a fair trial and freedom from cruel and unusual punishment.

Again, appellant neglected to object to the trial court's instruction in this regard and has accordingly waived any objections with regard to this alleged error. *State* v. *Fanning, supra.* More importantly, in *State* v. *Jenkins, supra,* at 214, this court ruled that a jury's recommendation of a life sentence under R.C. 2929.03(D)(2) must be unanimous.

In his final proposition of law, appellant contends that Ohio's death penalty statutes are unconstitutional in several respects. First, appellant contends that the infliction of the death penalty necessarily violates his due process rights. Second, appellant argues that R.C. 2929.022, 2929.03 and 2929.04 violate his rights to effective assistance of counsel and to a trial before an impartial jury, as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as the companion provisions contained in the Ohio Constitution. Third, appellant submits that R.C. 2929.03 and 2929.04 violate both the United States and Ohio Constitutions by failing to provide adequate guidelines for deliberation, leaving the jury without proper guidelines in balancing the aggravating and mitigating circumstances. Fourth, appellant asserts that R.C. 2929.022, 2929.03, 2929.04 and Crim. R. 11(C)(3) place an unconstitutional burden on his right to a jury trial under the state and federal Constitutions, as well as his right to be free from compulsory self-incrimination. Fifth, appellant contends that R.C. 2929.03 fails to provide a meaningful basis for distinguishing between life and death sentences, since it does not explicitly require the jury to specify the mitigating circumstances found, or to identify its reasons for such sentence when it recommends life imprisonment. Sixth, appellant argues that the appellate review provision of R.C. 2929.05 is constitutionally inadequate, in that it fails to specifically require inquiry and findings regarding arbitrariness, passion, or prejudice. Seventh, appellant asserts that Ohio's death penalty statute impermissibly mandates imposition of the death sentence and precludes a mercy option in the absence of mitigating evidence, or when aggravating circumstances outweigh mitigating factors. Eighth, appellant charges that the Ohio death penalty scheme permits imposition of the death sentence on a less than adequate showing of culpability, by failing to require a conscious desire to kill, premeditation, or deliberation as the culpable mental state. Lastly, appellant contends that the single aggravating circumstance that he was found guilty of committing (R.C. 2929.04[A][7]) is constitutionally invalid when used with an R.C. 2903.01(B) aggravated murder charge, especially when applied, as here, to an offender asserted to be acting alone.

All of the foregoing constitutional arguments raised by appellant were fully addressed and rejected by this court in *State* v. *Jenkins, supra,* or have been considered by this court in the disposition rendered in the cause *sub judice.* Therefore, we reject these arguments as they are presented herein.

In conclusion, we first find that there is no merit to any of the specific issues raised by the appellant concerning the jury trial resulting in his conviction of the crimes described. Second, we find that the aggravating circumstances outweigh any and all mitigating factors attempted to be presented by the appellant. Third, we find the sentence of death to be appropriate in this case, as it is neither excessive nor disproportionate to the penalty imposed in similar cases. Therefore, in accordance with R.C. 2929.05(A), we affirm the conviction and sentence of death in this case.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., concurs in judgment only.

