This matter presents a timely appeal from a jury verdict and judgment rendered upon such verdict by the Mahoning County Common Pleas Court, finding defendant-appellant, Dashon Dickerson, guilty on two counts of murder and two attendant firearm specifications, along with his subsequent sentencing thereon.
In the early morning hours of April 27, 1995, two individuals, James King, Jr. and Damon Fleming, were killed near 130 East Delason, in the City of Youngstown, Mahoning County, Ohio, as a result of gunshot wounds to the head. Appellant was indicted on August 4, 1995, on two counts of aggravated murder, along with attendant firearm specifications on each count. Appellant was also indicted on one count of having a weapon while under disability, along with an attendant firearm specification. Appellant's motion to sever the count of having a weapon while under disability from the aggravated murder counts was granted prior to trial.
Following discovery, this matter proceeded to jury trial on October 15, 1996. Immediately prior to trial, plaintiff-appellee, State of Ohio, moved to amend the aggravated murder charges to two counts of murder, along with the attendant firearm specifications on each count. Said motion was ultimately granted by the trial court. Appellant's motions for a directed verdict of acquittal upon the close of appellee's evidence and again at the close of all evidence were overruled by the trial court. Following due deliberation, the jury found appellant guilty on both counts of murder and guilty on both firearm specifications. The trial court entered judgment on the verdict.
The trial court sentenced appellant to serve an indefinite incarceration term of not less than fifteen years nor more than life on each count of murder, such terms to run consecutively to each other and consecutively to the term of incarceration which appellant was currently serving on a previous conviction. Appellant's convictions on the attendant firearm specifications were merged together and appellant was sentenced to serve a definite, actual incarceration of three years, to be served prior to the sentences for each count of murder. This appeal followed.
Appellant originally set forth five assignments of error on appeal. However, by journal entry filed July 7, 1998, this court acknowledged appellant's voluntary withdrawal of his third assignment of error. We will therefore address the remaining four assignments of error presented by appellant for consideration.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL."
At the close of appellee's case and again at the close of all evidence, appellant moved for a directed verdict of acquittal, which the trial court treated as a Crim.R. 29 motion for judgment of acquittal and overruled on each occasion.
Appellant argues that no forensic evidence conclusively linking him to the within crimes was offered at trial and the lack of such evidence produced a jury verdict which was based upon speculation. Appellant points out that no murder weapon was introduced into evidence and appellee's own ballistics expert, Michael Roberts of the BCI Firearms Division, admitted on cross-examination that the bullet fragments recovered from the victims could have been fired from different weapons. (Tr. 856). Appellant states that the only evidence against him was the eyewitness testimony offered by Elizabeth Green, Jason Blaylock and Eugene Hill, which defense counsel demonstrated was unreliable and untrustworthy on the part of all such witnesses.
Appellant concludes that the evidence presented by appellee was not sufficient to support a conviction and therefore, the trial court erred in overruling both of his motions for judgment of acquittal.
Crim.R. 29(A) states:
 "Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
In reviewing a motion for acquittal, the court in State v.Miley (1996), 114 Ohio App.3d 738, 742 has stated:
 "A motion for acquittal at the close of the state's case tests the sufficiency of the evidence. Pursuant to Crim.R. 29(A), a trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves each element of the crime beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, 263 * * *. An appellate court undertakes a de novo review and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt. State v. White (1989), 65 Ohio App.3d 564, 568 * * *. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, * * *, paragraph two of the syllabus."
Appellant takes issue with the testimony presented by Elizabeth Green, Jason Blaylock and Eugene Hill. Ms. Green testified that she and her roommate were having a party at the location of the shooting and that appellant was present. She recalled that several individuals from a local gang were also in attendance and that although appellant was not a member, he was friendly with them. (Tr. 744-745). Ms. Green stated that on the night in question, appellant had a gun of about two feet in length on his person. (Tr. 747-749). Ms. Green offered that at some point later in the evening, the victims, Damon Fleming and James King, Jr. arrived and that Damon Fleming stayed in his vehicle while James King, Jr. got out of the vehicle to speak with Jason Blaylock.
Ms. Green related that James King, Jr. made a derogatory reference to Jason Blaylock about the local gang. (Tr. 756). At that point, another individual, Vachon May, struck James King, Jr. in the face. (Tr. 758). Ms. Green stated that she went into her house and shortly thereafter heard gunshots. (Tr. 759). Ms. Green admitted that she did not see who shot the victims but added that appellant, along with Jermaine Bunn and Vachon May, were armed at the time. On cross-examination of Ms. Green, it was learned that her testimony at trial differed somewhat from the videotaped statement which she gave to police officials following the shooting.
During his testimony, Jason Blaylock confirmed that James King, Jr. made a derogatory remark to him about the local gang with which he was affiliated. Mr. Blaylock further confirmed that Vachon May struck James King, Jr. in the face and that both Jermaine Bunn and Vachon May were carrying handguns. (Tr. 886-888). Mr. Blaylock stated that he also saw appellant with an assault rifle on the night in question and that he was pointing said weapon toward the vehicle being driven by Damon Fleming. (Tr. 889-891). Mr. Blaylock acknowledged that in his statement to police officials he indicated that appellant came off the front porch of the house and began shooting his weapon. (Tr. 934). After refreshing his recollection by reviewing his statement at trial, Mr. Blaylock confirmed that appellant did fire his weapon. (Tr. 934). He also admitted that although Vachon May and Jermaine Bunn had handguns, he could not recall whether he saw them shooting said weapons. (Tr. 938).
Eugene Hill testified at trial that he was present at the location of the shooting on the night in question, as he had driven a friend there to pick up clothes from the residence. However, Mr. Hill stated it was not until they were driving away from the location that he heard gunshots. (Tr. 1117-1118). Mr. Hill had no knowledge as to who fired the weapon which fatally injured the victims in this case.
The trier-of-fact is in the best position to assess the credibility of the witnesses presented at trial, to decide conflicts in testimony, and to determine the weight to be afforded the evidence offered. State v. DeHass (1967), 10 Ohio St.2d 230.
After a thorough review of the trial transcript and construing the testimony in a light most favorable to appellee, we find that the testimony presented was sufficient to allow reasonable minds to find that all the elements had been proven beyond a reasonable doubt. Even assuming there was a discrepancy in the witness testimony, it was implicit in the trial court's decision that any doubt must be resolved in favor of appellee and that such discrepancy did not affect overall credibility. We must emphasize that the jury was in the best position to judge the credibility of the witnesses presented at trial. The question of credibility regarding conflicting testimony and the weight to be accorded evidence are primarily for the trier-of-fact. (See DeHass, supra and State v. Scott
(1986), 26 Ohio St.3d 92). It was within the purview of the jury to believe one witness more than another and this court will not substitute its judgment for that of the trier-of-fact.
Furthermore, although appellant complains that no forensic evidence was offered against him, direct evidence is not essential to prove an element of an offense; circumstantial evidence is equally probative. (See State v. Jenks (1991),61 Ohio St.3d 259).
We cannot find in this case that reasonable minds could only reach the conclusion that the evidence failed to prove all the elements of the crime beyond a reasonable doubt. Therefore, the trial court did not err in overruling appellant's motions for judgment of acquittal.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
When faced with a manifest weight of the evidence argument, an appellate court may not reverse a judgment arising from a jury verdict absent the unanimous concurrence of all three appellate judges. State v. Thompkins (1997), 78 Ohio St.3d 380,389. Thompkins elaborated on the concept of weight of the evidence, stating:
 "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) [Black's Law Dictionary (6 Ed. 1990) 1594.]
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs v. Florida (1982), 457 U.S. 31, 42, * * *.] See, also, State v. Martin
(1983), 20 Ohio App.3d 172, 175, * * * ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed * * *.')." Thompkins, supra at 387.
Appellant reiterates his arguments as set forth under his first assignment of error and specifically points again to the testimony at trial offered by Jason Blaylock. Appellant states that although Mr. Blaylock testified appellant was pointing his weapon toward the vehicle being driven by Damon Fleming (Tr. 889-891) and came off the front porch of the house shooting such weapon, Mr. Blaylock also admitted that he had been drinking on the night in question. (Tr. 879, 913). Appellant thereby believes the fact that Mr. Blaylock had been drinking affected his recollection of the events in question.
Appellant also points to the testimony offered by Maria Pineiro, who directly contradicted Jason Blaylock's version of events and indicated that Eugene Hill and his companion shot the victims. (Tr. 1018-1020). However, Ms. Pineiro admitted on cross-examination that "everything happened so fast that night" and that other individuals were shooting their weapons at the time in question. (Tr. 1034, 1036-1037). It was also established on cross-examination that Ms. Pineiro's testimony was not completely consistent with the information which she initially provided to police officials following the shooting. Furthermore, Eugene Hill testified that it was not until he was driving away from the location of the shooting that he heard gunshots.
Elizabeth Green testified at trial that appellant had a gun about two feet in length on his person and that he was present during the shooting. (Tr. 748-749, 760). The testimony offered by Jason Blaylock confirmed that appellant was brandishing an assault rifle on the night in question. Michael Roberts, a forensic scientist in the firearms division of the Bureau of Criminal Identification and Investigation, testified that the shell casings found at the scene of the crime were from a high-powered assault weapon. (Tr. 806-808).
We reiterate and stress that the question of credibility regarding conflicting testimony and the weight to be accorded evidence are primarily for the trier-of-fact. DeHass, supra;Scott, supra. It was within the purview of the jury to believe one witness more than another. The greater amount of credible evidence presented in this case reveals that appellee met its burden in proving that appellant was guilty beyond a reasonable doubt. As stated in Thompkins, supra, this court is the thirteenth juror and can reverse on the weight of the evidence if we disagree with the jury's determination of conflicting testimony. Based upon a review of all evidence offered herein, this court cannot disagree with the jury's decision.
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error having been voluntarily withdrawn, we next address appellant's fourth assignment of error, which alleges:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED THE MANDATE OF R.C. 2929.41(E)(1) IN SENTENCING THE DEFENDANT."
Appellant was sentenced to an indefinite term of incarceration of not less than fifteen years nor more than life for each count of murder, to be served consecutively to each other and consecutively to the three year actual incarceration term for the merged firearm specifications. Appellant argues that pursuant to the previous version of R.C. 2929.41(E)(1), which was applicable at the time he was sentenced in this case, when the consecutive terms imposed include a term of incarceration for murder and do not include a term of incarceration for aggravated murder such consecutive terms shall not exceed the aggregate minimum term of twenty years. Appellant states that his aggregate minimum term of incarceration in this case totaled thirty years, plus three years actual incarceration for the merged firearm specifications, and thereby violated the statutory limit set forth in R.C. 2929.41(E)(1) Appellant concludes that such violation constituted a miscarriage of justice and the trial court abused its discretion in rendering its sentence.
We are cognizant of the fact that the Ohio Supreme Court inState v. White (1985), 18 Ohio St.3d 340, declared that the terms of R.C. 2929.41(E)(3), then (E)(2), were self-executing, operating automatically to limit aggregate minimum sentences. The sentence rendered in the case at bar is similar to that which was rendered in State v. Fowler (Feb. 1, 1999), Mahoning App. No. 96-C.A.-58, unreported, wherein this court recently held that the same statute in question here, R.C.2929.41(E)(1), operated to automatically limit the aggregate minimum term of incarceration to twenty years, including the three year term of actual incarceration imposed for the merged firearm specifications. Therefore, although the sentence issued by the trial court in this case was error, such judgment was not the basis of a reversible error. White, supra; Fowler,supra.
In cases wherein an appellant presents multi-faceted issues regarding a sentence, it may become necessary to determine whether the sentence falls within statutory limits, nothwithstanding the self-executing nature of the statute, in order that we may then speak to the remaining issues concerning a given sentence. (See State v. Giannini (Dec. 11, 1998), Mahoning App. No. 97-C.A.-254, unreported). However, such is not the circumstance in the case at bar. As we found in Fowler,supra, there is no need to modify appellant's sentence or remand for re-sentencing as the effects of the statutory scheme are self-executing.
Appellant's fourth assignment of error is found to be without merit.
Appellant's fifth assignment of error alleges:
 "THE TRIAL COURT DEMONSTRATED PREJUDICE TOWARDS DEFENDANT IN REPEATEDLY REFERRING TO AN EARLIER UNRELATED CONVICTION OF DEFENDANT DURING SENTENCING."
Appellant complains that in making his sentencing recommendation to the trial court, the prosecuting attorney repeatedly referred to appellant's earlier conviction, as follows:
 "MR. HALL: * * *. The Court will recall that it actually seems like yesterday, but it was three months ago and we are here under almost the same circumstances.
 "Dashon Dickerson took the life of Shanikki Speller and back in July of 1996, the Court imposed what was a very appropriate sentence of 26 years to life to protect this community from the individual and to honor the memory of that victim.
 "Unfortunately, today we have to speak about two more victims who died at the hands of Dashon Dickerson, that being James King, Jr. and Damon Fleming, and I will say to the Court that three (sic) lives were just as significant as that of Shanikki Speller; that the sentence to be imposed upon this defendant should reflect the seriousness of committing three homicides in this community.
 "* * *, so that when this individual has (sic) done serving the sentence for Shanikki Speller, it (sic) will start to think about James King, Jr. for the next 18 years and when done with that sentence, will start to think about Damon Fleming for the following 18 years." (Sentencing Tr. 2-3).
In response to appellant's request for concurrent sentencing, the trial court posed the query, "Same time Mr. King and Shanniki Speller have?" (Sentencing Tr. 9). In rendering its sentence, the trial court indicated that same would not even begin until after appellant had served his time for causing the death of Shanikki Speller and that it was the court's intention for appellant to spend his life in jail for Shanikki Speller, James King and Damon Fleming. (Sentencing Tr. 10). The trial court reiterated its sentencing determination as follows:
 "* * *. As I indicated, these two life terms in prison are to be served consecutive to each other and consecutive with causing the death of Shanikki Speller under 95 CR 122." (Sentencing Tr. 11).
Appellant argues that as a result of the foregoing remarks, the trial court was unduly preoccupied with his previous conviction and dwelled upon such fact to a point well beyond the mere consideration of recidivism. Appellant complains it would appear that the trial court was attempting to improperly resentence him for his earlier offense. Appellant concludes that the trial court abused its discretion in rendering its sentence against him.
A trial court has broad discretion in imposing a sentence.State v. Bruce (1994), 95 Ohio App.3d 169. When a sentence is challenged on appeal, the reviewing court must consider whether the trial court abused its discretion. State v. Joseph (1996),109 Ohio App.3d 880. The term abuse of discretion connotes more than a mere error of law or judgement; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151.
The imposition of a concurrent or consecutive sentence falls within the sound discretion of the trial court. The terms of former R.C. 2929.41(B)(1) state that a sentencing court may specify that imprisonment be consecutive to any previously imposed sentences. Moreover, a trial court is entitled to take into consideration the criminal history of a defendant.
Appellant has taken the statements made by the prosecuting attorney and the trial court out of context. The record refers to appellant's previous conviction and sentence for the death of Shanikki Speller. Such fact establishes appellant's prior criminal history and does not demonstrate prejudice toward appellant by either the prosecuting attorney or the trial court. Clearly, the trial court was not attempting to re-sentence appellant for his previous offense as appellant suggests.
In accordance with our discussion under appellant's fourth assignment of error concerning the self-executing nature of R.C. 2929.41(E)(1), we find that the trial court did not abuse its discretion in the severity of the sentence imposed nor was appellant prejudiced by any reference made to his previous conviction and sentence for the death of Shanikki Speller.
Apellant's fifth assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
APPROVED:
 ______________________________ EDWARD A. COX, PRESIDING JUDGE