[Cite as *State v. Howard*, 2016-Ohio-4786.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 15CA26 |
| FREDDIE HOWARD | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Richland County Common
                             Pleas Court, Case No. 2014-CR-0626

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      June 30, 2016

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

BAMBI COUCH PAGE                R. JOSHUA BROWN
Prosecuting Attorney            32 Lutz Avenue
Richland County, Ohio           Lexington, Ohio 44904

By: DANIEL M. ROGERS
Assistant Prosecuting Attorney
Richland County Prosecutor's Office
38 S. Park Street
Mansfield, Ohio 44902

*Hoffman, P.J.*

{¶1}   Defendant-appellant Freddie Howard appeals his conviction and sentence entered by the Richland County Court of Common Pleas, following a jury trial.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On October 14, 2014, the Richland County Grand Jury indicted Appellant on two counts of aggravated burglary, in violation of R.C. 2911.11(A)(1) & (2), felonies of the first degree; one count of rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree;  one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1), a felony of the fourth degree; four counts of aggravated robbery, in violation of R.C. 2911.01(A)(1) & (3), felonies of the first degree; one count of theft of drugs, in violation of R.C. 2913.02(A)(1) & (B)(6), a felony of the fourth degree; four counts of felonious assault, in violation of R.C. 2903.11(A)(1) & (2), felonies of the second degree; and one count of grand theft of a motor vehicle, in violation of R.C. 2913.02(A)(1) & (B)(5), a felony of the fourth degree.  All of the counts carried attendant firearm specifications pursuant to R.C. 2941.145.  The charges arose from a September 2, 2014 incident during which Appellant and at least two other men broke into the home of Brittany Roman, and proceeded to rob and assault Roman and her friend, Ryan Reed.

{¶3}   Appellant entered a plea of not guilty to the Indictment at his arraignment on October 21, 2014.  The trial court scheduled a final pretrial for December 1, 2014, and a jury trial for December 18, 2014.  Appellant filed a motion for continuance of trial on December 3, 2014.  The trial court granted Appellant's motion, and rescheduled the trial for January 29, 2015.  The trial was subsequently rescheduled to February 26, 2015.  The

state filed a motion for continuance of trial, which the trial court granted. The trial court rescheduled the trial for March 12, 2015.

{¶4} On the first day of trial, prior to jury selection, the state dismissed the rape count and the gross sexual imposition count.

{¶5} The following evidence was adduced at trial.

{¶6} Brittany Roman and her four children lived with Roman's brother at 40 Bartley Avenue, Mansfield, Richland County, Ohio. On August 30, or September 1, 2014, Appellant, who was a friend of Roman's husband and a frequent visitor at the Bartley Avenue residence, sold Roman his pitbull, Rocco, and gave her a revolver for protection. Roman's husband was incarcerated at the time. Prior to his incarceration, Roman's husband arranged for Travis Brantley to stay with Roman and her children for protection as the Bartley Avenue residence had been burglarized on a number of occasions. Roman asked Brantley to leave because she had concerns about his drug use.

{¶7} On September 1, 2014, Roman arranged for her friend, Ryan Reed, to stay with her and her children at the Bartley Avenue residence. Kimberly Blevins, Roman's mother, came to the residence to fix the front and back doors, which were both broken. Blevins and Reed installed a deadbolt on the front door. Blevins also locked all of the windows. Appellant appeared at the residence at this time, explaining he needed to show the pitbull what areas to guard. While walking the pitbull around the residence, Appellant, without Roman's permission or knowledge, unlocked one of the windows.

{¶8} At approximately 7 p.m., Blevins and Roman's four children left the residence and went to the home of Blevins' friends, Trinity, with whom Blevins was staying. Appellant left the residence shortly thereafter. Roman picked up her children at

approximately 10 p.m., returned home, and put the children to bed. Roman and Reed sat on the couch in the living room and watched television. Shortly before midnight, Roman asked Reed to place the revolver Appellant had given her on the top shelf of a hutch in the dining room. Roman and Reed eventually fell asleep on the couch.

{¶9} Several hours later, at least three individuals, including Appellant, who was wearing a mask, a black hooded sweatshirt, and gloves, broke into the residence through the window Appellant had unlocked. Soon after entering the residence, one of the intruders found the revolver Appellant had given Roman. The intruders proceeded to the living room where they assaulted Roman and Reed while demanding money. They stole three strips of Suboxone which Reed had in his pocket. One of the intruders placed Appellant's pitbull in the dog's crate.

{¶10} Reed was repeatedly struck in the head with the revolver. To avoid further assault, he laid on the living room floor and pretended to be unconscious. Appellant and one of the others dragged Roman through the house while continuing to assault her and demand money. During the assault, Appellant threatened to kill one of Roman's children every hour if she did not comply with their demands. The intruders dragged Roman back to the living room. They ransacked the home, returning frequently to continue their assault of Roman.

{¶11} Roman remembered Brantley had left heroin in the home, and offered it to the intruders if they would leave. Appellant grabbed Roman, forced her into a chair, placed the revolver under her chin, and threatened to kill her. Appellant stole Roman's wedding ring. Throughout the attack, the intruders disguised their voices. However, as Appellant held the revolver under Roman's chin and threatened to kill her, he dropped his

disguise and Roman recognized his voice. The intruders dragged Roman to the basement where one proceeded to sexually assault her. Appellant and another intruder left the residence during the sexual assault. When the final intruder left, Roman ran upstairs, grabbed her children and her brother, and fled to Trinity's house to find Blevins. Roman, who was covered head to toe in blood, told Blevins about the attack and indicated Appellant was one of the intruders.

{¶12} While Roman fled to Trinity's house, Reed remained at the residence and called 911. Officer John Meyer of the Mansfield Police Department responded to the call. Officer Meyer arrived at the Bartley Avenue residence at approximately 5 a.m. on September 2, 2014, and found Reed sitting on the sidewalk, his face covered in blood. After taking Reed's statement, Officer Meyer contacted the Mansfield Fire Department. Emergency personnel arrived at the scene and transported Reed to the emergency room at MedCentral. Officer Boor arrived at the residence and assisted Officer Meyer in securing the scene. The officers noticed the house had been ransacked and it appeared whomever broke in was looking for something.

{¶13} When Roman and Blevins returned to the residence at approximately 5:30 a.m., Roman gave a brief statement to Officer Meyer. Roman was subsequently transported to the emergency room at MedCentral. Officer Meyer described Roman as very scared and hysterical.

{¶14} Anthony Tambasco, Director of the Mansfield Police Department Crime Laboratory, processed the scene, taking photographs, and collected swabs of bloodstains, fingerprints, and other evidence, including gloves, cellphone parts, keys, a throw pillow, tools, and a cigarette butt. Tambasco also processed a Jeep Commander.

{¶15} Detective David Scheurer conducted his initial interviews of Reed and Reed at MedCentral at approximately 7:00 a.m. and 7:15 a.m., respectively. Detective Scheurer photographed Reed's injuries which included pneumocephalus, a fractural frontal skull bone, a fractured sinus wall, subdural bleeding, and multiple facial lacerations. Due to the pneumocephalus and subdural bleeding, Reed was transferred to Ohio State University for examination by a neurosurgeon. Detective Scheurer also interviewed Roman and photographed her injuries, which included three scalp lacerations, a closed head injury, and multiple bruises and abrasions all over her body. Thereafter, Detective Scheurer returned to the Bartley Avenue address, and instructed Tambasco to focus on specific areas of the home, the basement, living room, pool room, and Roman's bedroom.

{¶16} Detective Scheurer conducted a second interview with Roman at approximately 1 p.m. that same day. During this interview, Roman identified Appellant as one of the intruders. Detective Scheurer contacted the Richland County Prosecutor's Office and obtained an arrest warrant for Appellant. Appellant was arrested a few hours later at 148 Lind Avenue, Mansfield, Ohio. Officers obtained a search warrant for the Lind Avenue residence, and executed said warrant following Appellant's arrest. During the search, the officers located the revolver Appellant had given Roman, and subsequently used during the attack, wrapped in a pink and black cloth and hidden behind a panel attached to a bedroom wall. Multiple blood stains were observed on the revolver. Officers also recovered Blevins' driver's license which she had lost at the Bartley Avenue residence some time before the attack.

{¶17} Detective Scheurer interviewed Appellant following his arrest. Appellant denied any involvement in the attack at the Bartley Avenue address. However, Appellant

admitted the pitbull he left with Roman, which had remained calm throughout the incident, would attack anyone it did not know. Detective Scheurer collected DNA samples of Appellant, which were sent to the Manfield Police Department Crime Laboratory.

{¶18} Dawn Fryback of the Manfield Police Department Crime Laboratory analyzed the evidence recovered from 40 Bartley Avenue and 148 Lind Avenue. Fryback performed DNA analysis on the bloodstains found on the revolver recovered at 148 Lind Avenue, and concluded to a reasonable degree of medical certainty Roman was the source of the blood taken from the end of the revolver barrel, and Reed was one of the sources of the blood taken from the bottom of the revolver. At trial, Roman and Reed identified the revolver as the one Appellant gave to Roman days before the attacks.

{¶19} Prior to the trial court instructing the jury, Appellant filed a request for jury instructions, which included a request for an instruction on the affirmative defense of termination. The trial court denied Appellant's request for the instruction on the affirmative defense, finding the evidence did not support such an instruction. Appellant never objected to the trial court's failure to instruct the jury on the affirmative defense of termination.

{¶20} After hearing all the evidence and deliberating, the jury found Appellant guilty of Counts 1 and 2, aggravated burglary; Counts 5, 6, 7, and 8, aggravated robbery; and Counts 10, 11, 12, and 13, as well as the attendant firearm specifications. The jury found Appellant not guilty of Count 9, theft of drugs; and Count 14, grand theft of a motor vehicle. Prior to imposing Appellant's sentence, the trial court found Count 2 merged with Count 1; and Counts 7, 8, 10, 11, 12, and 13 merged with Counts 5 and 6. The trial court subsequently sentenced Appellant to an aggregate sentence of twenty-seven (27) years.

The trial court also imposed five (5) years of mandatory post-release control and ordered Appellant to pay $11,481, in restitution.  The trial court granted Appellant 207 days of jail time credit.

**{¶21}** It is from his conviction and sentence Appellant appeals, raising the following assignments of error:

**{¶22}** "I. THE TRIAL COURT ERRED IN LIMITING DEFENSE COUNSEL'S CROSS-EXAMINATION OF THE STATE'S WITNESS, DETECTIVE SCHEURER.

**{¶23}** "II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR A JURY INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF TERMINATION."

I

**{¶24}** In his first assignment of error, Appellant argues the trial court erred in limiting defense counsel's cross-examination of Detective Scheurer.  We disagree.

**{¶25}** Evid.R. 801(D) defines statements which are not hearsay by their very definition.  Included in these statements are admissions by a party-opponent. *See* Evid.R. 801(D)(2). Pursuant to Evid.R. 801(D)(2), such statements must be offered "*against* a party." (Emphasis added.)  When a statement a defendant makes to a law enforcement officer is offered by the state of Ohio against the defendant, a party-opponent, that statement, by its very definition, is not hearsay. Accordingly, in order to offer that statement, the State need not argue the statement falls within one of the clearly defined exceptions to the hearsay rule.  On the other hand, if the defendant should seek to present an exculpatory statement the defendant made to a law enforcement officer through the testimony of that officer, such statement is not being offered against the state, the party-opponent, but rather offered for the defendant.  Therefore, it is hearsay.  Evid.R. 801(C).

In order for that statement to be permitted without the defendant testifying, the defendant must establish the statement falls within one of the clearly defined exceptions to the hearsay rule. *See, State v. Lewis,* 7th Dist. No. 03 MA 36, 2005–Ohio–2699, ¶ 127–128.

**{¶26}** We find Appellant has failed to establish the potentially exculpatory statements he made to Detective Scheurer fall within one of the exceptions to the hearsay rule. Accordingly, we find the trial court did not commit error in prohibiting Appellant from cross-examining the detective about these statements.

**{¶27}** In his Brief to this Court, Appellant relies upon *State v. Thompson* (Feb. 1, 1988), Butler App. No. CA87-01-008, unreported[1], in support of his assertion the trial court violated his Sixth Amendment right of confrontation by limiting his cross-examination of Detective Scheurer.

**{¶28}** In *Thompson*, the appellant argued, inter alia, the trial court erroneously prevented defense counsel from adducing evidence favorable to the appellant during cross-examination of one of the state's witnesses, a police officer who arrested the appellant in Arizona on a fugitive warrant. *Id*. at *1. On direct examination, the officer testified as to inculpatory statements made by the appellant while in custody in Arizona. *Id.* On cross-examination, defense counsel attempted to question the officer about certain exculpatory statements made by the appellant. *Id.* The trial court sustained the state's objection, stating the appellant could introduce the information by taking the stand himself or recalling the officer during his case in chief. *Id.*

---

[1] In his brief to this Court, Appellant incorrectly cites *State v. Walker*, 1983 Ohio App. Lexis 11762. However, the facts of the case Appellant references are from *Thompson*, supra.

**{¶29}** The *Thompson* Court agreed with the First District Court of Appeals' holding in *State v. Barnes*, (Jan. 6, 1982), Hamilton App. No. C-810139, unreported, "[e]vidence favorable to the accused may be more persuasive to the jury when pronounced by a witness for the prosecution * * * [t]herefore, cross-examination as to such information should be permitted, particularly where, as here, defense counsel merely attempts to elicit the balance of a prior statement of the accused to which the witness testified on direct." *Id.* at *2. The *Thompson* Court concluded, "Although the trial court should have permitted the cross-examination of [the police officer] as to the balance of appellant's statement, its failure to do so did not rise to the level of an abuse of discretion. The trial court's ruling did not foreclose appellant from presenting the evidence." *Id.*

**{¶30}** Neither the *Thompson* Court nor the *Barnes* Court addressed whether the exculpatory statement the trial courts prohibited the appellants from presenting was admissible under the hearsay rule. Rather, these Courts found the appellants were not prejudiced by the trial courts' limitation of their cross-examinations as they were not foreclosed from adducing such evidence in their own cases-in-chief.[2] While we agree the appellants in *Thompson* and *Barnes* and Appellant herein, for that matter, were not prejudiced by the trial courts' rulings, we find the evidence was not admissible.

**{¶31}** Based upon the foregoing, we overrule Appellant's first assignment of error.

---

[2] Appellant herein was also not foreclosed from adducing the evidence in his own case-in-chief had he elected to testify. He did not.

II

{¶32} In his second assignment of error, Appellant contends the trial court erred in denying his request for a jury instruction on the affirmative defense of termination. We disagree.

{¶33} Initially, we note defense counsel did not renew his request for a jury instruction on the affirmative defense of termination and failed to object to any perceived error in the trial court's jury charge. Failure to object to a jury instruction waives any claim of error relative to that instruction, unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Underwood*, 3 Ohio St.3d 12 (1983); *State v. Nolling*, 98 Ohio St.3d 44 (2002). It is well established, absent plain error, an appellate court will not consider errors to which the defendant failed to object at the trial level. *State v. Williams* (1977), 51 Ohio St.2d 112. The "plain error rule" should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice. *Underwood*, supra at 14.

{¶34} In *State v. Scott*, 26 Ohio St.3d 92, 101, 497 N.E.2d 55 (1986), the Supreme Court of Ohio explained:

{¶35} "This court has held that it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge. * * * However, * * * the court may refuse to give an instruction as to a matter which is not applicable to the facts governing the case." (Citations omitted.)

{¶36} The affirmative defense of termination pursuant to R.C. 2923.03(E), provides that it "is an affirmative defense to a charge under this section that, prior to the

commission of or attempt to commit the offense, the actor terminated his complicity, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." The burden is on the defendant to prove the elements of an affirmative defense by a preponderance of the evidence. *State v. Martin,* 21 Ohio St.3d 91 (1986); *State v. Miller,* 149 Ohio App.3d 782, 2002–Ohio–5812, at ¶ 7 (1st Dist.).

**{¶37}** To prove termination, Appellant would have to show he manifested a complete and voluntary renunciation of his criminal purpose.

**{¶38}** In the instant action, the evidence established Appellant and one of the other intruders left the residence prior to the sexual assault upon Roman.  Although Appellant may not have aided and abetted the sexual assault, there was no evidence he terminated his complicity prior to the home invasion; prior to the commission of the initial physical assaults and threats; or prior to the robbery of Roman and Reed.  In addition, after leaving Roman's home, Appellant aided and abetted the offenses by hiding the gun used during the commission of the crimes. We note the state dismissed the rape and gross sexual imposition charges before trial.

**{¶39}**  Upon review of the record, we find the trial court did not error when it refused to give the requested instruction.

**{¶40}**  Appellant's second assignment of error is overruled.

**{¶41}** The judgment of the Richland County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Delaney, J.  and

Baldwin, J. concur