[Cite as *Toledo v. Kinnebrew*, 2018-Ohio-121.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo          Court of Appeals Nos. L-17-1001
                                                            L-17-1002
      Appellee                                    L-17-1003
                                                            L-17-1004
v.                                                          L-17-1005

Jamille T.L. Kinnebrew               Trial Court Nos. CRB-16-11803
                                                      CRB-16-09675-0104
      Appellant                                 CRB-16-09675-0204
                                                      CRB-16-09675-0304
                                                      CRB-16-09675-0404

                                      **DECISION AND JUDGMENT**

                                      Decided:  January 12, 2018

* * * * *

David Toska, City of Toledo Chief Prosecutor, and
Henry Schaefer, Assistant Prosecutor, for appellee.

Misty Wood, for appellant.

* * * * *

**JENSEN, P.J.**

## I.  Introduction

{¶ 1} In this consolidated appeal, appellant, Jamille Kinnebrew, appeals the judgment of the Toledo Municipal Court, sentencing him to probation upon the suspension of his jail sentences following his convictions for one count of domestic violence, one count of assault, one count of obstructing official business, and one count of resisting arrest.  For the following reasons, we affirm.

### A.  Facts and Procedural Background

{¶ 2} The facts in this case, as recited to us by appellant in his brief to this court, are uncontested by appellee, the city of Toledo ("the city").  This matter arose out of a domestic incident that occurred on the evening of July 12, 2016, involving appellant and his 13-year-old stepdaughter, A.W.  Prior to the incident, A.W.'s mother took A.W.'s mobile phone from her as punishment for "doing things [she] wasn't supposed to be doing on [her] phone and [having] an attitude."  Thereafter, appellant asked A.W. to give him her tablet.  According to A.W.'s testimony, A.W.'s younger sister procured the tablet and gave it to appellant.  Appellant then asked A.W. why she did not retrieve the tablet herself and give it to him.  A.W. remained silent and, according to A.W., appellant hit her twice with a belt across the front of her body.  Appellant then instructed A.W. to sit down.  A.W. initially complied, but later stood back up, prompting appellant to push her back into her seat.  This occurred "three or four" more times.  Meanwhile, A.W. managed to secure her mobile phone and contact her father, who alerted the police to the incident.

2.

**{¶ 3}** Shortly thereafter, police arrived on the scene, along with A.W.'s father and stepmother. A.W. testified that she saw the officers carrying flashlights and heard them knocking on the door. The officers asked A.W. whether she could open the door. She responded in the negative, although on cross-examination A.W. testified that appellant never directed her not to answer the door. The officers then asked A.W. whether she was okay, and she responded in the negative. Concerned for A.W.'s safety, the officers proceeded to kick down the front door. The officers then entered the home with their flashlights on and their firearms drawn. The officers discovered appellant sitting on a chair approximately 15 feet from the door, recording the officers on his mobile phone. They directed appellant to lie on the ground, but appellant refused to comply. Appellant was subsequently placed onto the ground by officers and told to put his hands behind his back. Again, appellant refused to comply, and officers were forced to grab appellant's hands and place them behind his back in order to handcuff him.

**{¶ 4}** After appellant was placed under arrest, officers removed A.W. from the home and interviewed her. During the interview, A.W. informed the police that appellant had hit her with a belt and scratched her. During direct examination, A.W. acknowledged that her scratches came from an ironing board and not from appellant.

**{¶ 5}** As a result of the foregoing incident, appellant was charged with one count of domestic violence in violation of R.C. 2919.25, a misdemeanor of the first degree, one count of obstructing official business in violation of R.C. 2921.31, a misdemeanor of the second degree, one count of resisting arrest in violation of R.C. 2921.33, a misdemeanor of the second degree, one count of unlawful restraint in violation of R.C. 2905.03, a

3.

misdemeanor of the third degree, and one count of assault in violation of R.C. 2903.13, a misdemeanor of the first degree. A jury trial ensued, at which the city presented several witnesses and appellant took the stand in his own defense.

{¶ 6} At the close of the city's case-in-chief, appellant moved for acquittal under Crim.R. 29, which the trial court denied. With respect to the domestic violence charge, defense counsel stated the following in support of the motion for acquittal: "Your Honor, I guess if we are counting or identifying Mr. Kinnebrew as a stepfather and there is in loco parentis status, we believe that even if he did hit her, that there's reasonable parental discipline involved. So we don't believe that domestic violence has been shown."

{¶ 7} After denying appellant's motion for acquittal, the court entertained the parties' concerns regarding jury instructions. Relevant to the domestic violence charge, the court inquired as to whether the city objected to the inclusion of an instruction on the affirmative defense of reasonable parental discipline, under the assumption that evidence would be presented on that issue by appellant during his case-in-chief. The city did not object to the inclusion of a parental discipline instruction.

{¶ 8} Next, the matter proceeded to appellant's case-in-chief. Appellant did not call any witnesses on his behalf other than himself. During his testimony, appellant denied having hit A.W. with a belt. Appellant claimed that he was taken by surprise when the police arrived at his house and started knocking on his door. Appellant acknowledged that he and A.W. had gotten into an argument earlier in the day after he ordered A.W. to wash the dishes and complete her daily chores. However, he testified that things had settled down in the home by the time the police arrived.

4.

{¶ 9} Appellant went on to testify concerning his refusal to open the door when asked to do so by the responding officers. Appellant explained that he had a history with one of the responding officers and was fearful of him. According to appellant's testimony, police came into the home, tackled him, placed a knee on the back of his head, and pointed a gun at his face. Appellant insisted that he did not resist the police officers after they entered the home. Notably, this testimony was contradicted by the testimony of the officers who were called by the city, each of whom insisted that a knee was never placed on the back of appellant's head, that appellant was only taken to the ground after he refused to comply with repeated requests to lie down, and that their firearms were holstered during appellant's apprehension.

{¶ 10} At the close of appellant's testimony, appellant rested and the parties began discussions concerning revisions to the jury instructions. During the discussion, the city objected to an instruction on reasonable parental discipline based upon the fact that appellant denied hitting A.W. with the belt. Because appellant failed to testify as to any parental discipline that involved hitting A.W., and in fact testified that he never utilized corporal punishment in any form as a means to discipline A.W., the city argued that an instruction on reasonable parental discipline was not warranted. In response, defense counsel argued that the jury could find that appellant hit A.W., in which case appellant should be entitled to a jury instruction on parental discipline. Upon consideration of the parties' arguments, the court decided that the requested jury instruction would not be given, stating: "But, again, [the jury instruction] will come out because I believe you can't have it both ways. There needs to be some evidence to maintain your burden of

5.

proof for the affirmative defense, and if you're arguing that it never happened, then I don't think that's meeting your burden."

{¶ 11} After discussions concerning jury instructions were concluded, the parties presented closing arguments, and the jury retired for deliberations after receiving instructions. Ultimately, the jury found appellant guilty of domestic violence, assault, obstructing official business, and resisting arrest. The jury found appellant not guilty on the charge of unlawful restraint. The court then ordered the preparation of a presentence investigation report and continued the matter for sentencing.

{¶ 12} At the sentencing hearing, the court merged the assault and domestic violence charges. Appellant was then sentenced to 180 days, suspended, with 1 year probation, on the domestic violence charge, 90 days, suspended, with 1 year probation, on the obstructing official business charge and the resisting arrest charge. Appellant was also ordered to complete parenting and domestic violence classes, and perform 8 hours of community service.

{¶ 13} On December 29, 2016, appellant filed his timely notice of appeal in case Nos. L-17-1001, L-17-1002, L-17-1003, L-17-1004, and L-17-1005. We sua sponte ordered these cases consolidated under L-17-1001.

## B. Assignments of Error

{¶ 14} On appeal, appellant assigns the following errors for our review:

1. The Trial Court erred by not allowing the jury instructions on reasonable parental discipline and in loco parentis because Mr. Kinnebrew

6.

meet his burden of proving the affirmative defense by a preponderance of the evidence.

2. The officers violated Mr. Kinnebrew's Fourth Amendment rights by creating the exigency that allowed them to enter the home and by using excessive force when entering the home and when arresting Mr. Kinnebrew.

## II. Analysis

### A. Jury Instructions

{¶ 15} In his first assignment of error, appellant argues that the trial court erred in refusing to give a jury instruction on reasonable parental discipline and in loco parentis.

{¶ 16} "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240, citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). "'[I]t is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge.'" *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 134, quoting *State v. Scott*, 26 Ohio St.3d 92, 101, 497 N.E.2d 55 (1986). We review a trial court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An abuse of discretion connotes that the trial court's attitude

7.

was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 17} In *State v. Suchomski*, 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991), the Supreme Court of Ohio recognized the right of a parent to use corporal punishment as a means to discipline a child, free from prosecution for domestic violence under R.C. 2919.25(A), stating that "[n]othing in R.C. 2919.25(A) prevents a parent from properly disciplining his or her child." At least one court has applied the "reasonable parental discipline" defense set forth in *Suchomski* to a charge of assault under R.C. 2903.13. *City of Lorain v. Prudoff*, 9th Dist. Lorain No. 93CA005684, 1994 Ohio App. LEXIS 5790, *10-11 (Dec. 21, 1994).

{¶ 18} Here, appellant argues that he was entitled to an instruction on reasonable parental discipline in light of the evidence introduced at trial. The city responds by arguing that reasonable parental discipline is an affirmative defense as to which appellant carried the burden of proof. At trial, appellant testified that he never utilized corporal punishment in disciplining A.W. Appellant failed to introduce any of his own evidence as to reasonable parental discipline, likely because he denied having hit A.W. in the first instance. According to the city, appellant's defense was wholly inconsistent with the requested jury instruction. Having considered the parties' arguments in light of the entire record, we find that the trial court properly refused to provide the requested instruction.

{¶ 19} In another case involving an instruction on reasonable parental discipline, the Eleventh District addressed the degree to which a defendant is required to put forth evidence to support such an instruction. *State v. Vandergriff*, 11th Dist. Ashtabula No.

8.

99-A-0075, 2001 Ohio App. LEXIS 4285 (Sep. 21, 2001). In *Vandergriff*, the question was whether the defense of reasonable parental discipline was properly raised by the defendant where he chose not to testify at the trial and failed to introduce any direct evidence regarding the issue. *Id.* at *11. The court answered this question in the affirmative, finding that the defendant met his burden of production by cross-examining the city's witnesses on past disciplinary issues despite the fact that he did not call any of his own witnesses to testify on the issue. *Id.* at *12. The court went on to state:

> [Defendant] presented some evidence that the child in this case was a discipline problem and that he was permitted by the child's mother to discipline her when appropriate. [Defendant] also presented evidence that the child acted in a manner that cried out for some discipline. * * * "Once a defendant has presented evidence on the defense of parental discipline, the [trier of fact] must weigh whether the actions constituted proper and reasonable discipline, or whether they constituted an injury within the meaning set forth in *Suchomski, supra*." *Id.* at *17-18, quoting *State v. Mills*, 1st Dist. Hamilton No. C-960482, 1997 Ohio App. LEXIS 1161, *5 (Mar. 26, 1997).

{¶ 20} Unlike *Vandergriff*, appellant failed in this case to introduce any evidence, directly or by virtue of cross-examination, that could lead a trier of fact to conclude that A.W.'s injuries were the result of reasonable parental discipline. Rather, appellant insisted at trial that he never hit A.W. Thus, the issue the jury was faced with resolving was essentially one of credibility. The jury could either choose to believe that appellant

9.

did not strike A.W., or it could find that A.W. was the more credible witness and conclude that appellant did, in fact, strike her with a belt.  Because appellant failed to introduce any evidence on the issue of parental discipline, that question was not before the jury and an instruction was not warranted.  Therefore, we find that the trial court did not abuse its discretion when it refused to provide the requested instruction.

{¶ 21} Accordingly, appellant's first assignment of error is not well-taken.

## B.  Exigent Circumstances

{¶ 22} In his second assignment of error, appellant argues that the police officers that entered his home violated his Fourth Amendment rights by entering the home without a warrant after creating the exigency that allowed them to enter the home, and by using excessive force when entering the home and arresting him.  Appellant argues that the officers created the exigency by "banging on the doors and windows with flashlights," breaking a window, and kicking the door down.

{¶ 23} "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable."  *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), quoting *Coolidge v. N.H.*, 403 U.S. 443, 477, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).  The United States Supreme Court and the Supreme Court of Ohio have recognized an exception to this general rule where law enforcement officers need to respond to emergency situations to protect people from death or serious injury.  *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 21.  This "emergency-aid" exception allows officers to enter a dwelling without a warrant and without probable cause when they reasonably

10.

believe, based on specific and articulable facts, that a person within the dwelling is in need of immediate aid. *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed. 2d 290 (1978).

{¶ 24} "Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry." *State v. Enyart*, 10th Dist. Franklin Nos. 08AP-184, 08AP-318, 2010-Ohio-5623, ¶ 21, citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990). One important consideration in determining whether an exigency existed is the nature of the underlying crime. *See Welsh v. Wisconsin*, 466 U.S. 740, 754, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).

{¶ 25} In this case, the officers were responding to a report of domestic violence against a minor child. Upon arrival, the officers began knocking on the door and windows. At some point, the officers heard A.W. inside the home crying. One officer testified that he could see A.W. through the window, and stated that she looked like she was in distress and looked like she had been crying. A.W.'s father asked A.W. if she was okay, and she responded in the negative. A.W. was largely unresponsive to other questions. Officers then informed appellant that they would need to forcefully enter the home to check on the safety of A.W. if he continued to refuse to open the door.

{¶ 26} Upon consideration of the totality of the circumstances in this case, we find that the officers' warrantless entry into appellant's home to protect A.W. from additional harm was justified under the emergency aid exception to the Fourth Amendment. We

11.

find no merit to appellant's contention that the officers created the exigency that gave rise to the warrantless entry by knocking on the doors and windows with flashlights.

{¶ 27} Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 28} In light of the foregoing, the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.      _____
JUDGE

James D. Jensen, J.

Christine E. Mayle, P.J.      _____
CONCUR.                        JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.